[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-14420

_____

D.C. Docket No. 2:18-cv-14506-SMM

CYNTHIA LOUISE BUCKWALTER,

Plaintiff-Appellant,

versus

ACTING COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 3, 2021)

Before WILSON, LAGOA, and BRASHER, Circuit Judges.

WILSON, Circuit Judge:

We vacate our prior opinion dated May 14, 2021, and substitute the

following.

Cynthia Buckwalter appeals the district court's order affirming the Acting

Commissioner of the Social Security Administration's (Commissioner) denial of

her application for disability insurance benefits pursuant to 42 U.S.C. § 405(g).

Buckwalter suffers from bipolar disorder and depression. She also has a

history of drug and alcohol abuse. She previously worked as a hair stylist, but after

suffering a severe manic episode and a period of depression, she lost her ability to

cut hair. Though she sees a therapist regularly, takes medication to manage her

conditions, and attends Alcoholics Anonymous meetings, she is unable to live

alone and has not been able to work. Buckwalter applied for disability insurance

benefits in 2016. Her application was denied. She then requested, and was granted,

a hearing before an Administrative Law Judge (ALJ). The ALJ found her ineligible

for benefits.

On appeal to the district court, Buckwalter argued that the ALJ's decision

was not supported by substantial evidence. She alleged that there was a conflict

between her limitation to following only "simple" instructions and the jobs

identified for her that involved following "detailed but uninvolved" instructions.

She argued that the ALJ failed to reconcile that conflict in violation of *Washington*

*v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018). She also

argued that the ALJ's decision was not supported by substantial evidence because

he disagreed with the opinions of two non-treating physicians about one of her

2

levels of functioning despite giving "great weight" to the physicians' evaluations. Finally, she alleged that the ALJ failed to properly consider her processing speed score and whether it precluded her from work. The district court rejected Buckwalter's arguments and affirmed the agency's decision. Buckwalter renews her arguments on appeal to this court.

We have yet to resolve in a published decision whether there is an apparent conflict between one's limitation to following simple instructions and positions that require the ability to follow "detailed but uninvolved" instructions. The question has split the district courts in this circuit.[1] After careful review and with the benefit of oral argument, we hold that there is no apparent conflict. Because the decision is otherwise supported by substantial evidence, we affirm.

I.

We review de novo the ALJ's application of legal principles, and we review the ALJ's resulting decision "to determine whether it is supported by substantial evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v.*

---

[1] *Compare, e.g.*, *Sawls v. Berryhill*, No. 1:17-cv-624-GMB, 2018 WL 6313007, at *6 (M.D. Ala. Dec. 3, 2018) (holding that there is no conflict between a reasoning level of two and a limitation to following simple instructions), *with, e.g.*, *Congdon v. Saul*, No. 8:19-cv-274-T-SPF, 2020 WL 563538, at *5 (M.D. Fla. Feb. 5, 2020) (holding that a reasoning level of two conflicts with a limitation to following simple instructions).

*Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam). We will affirm the Commissioner's decision if it is supported by substantial evidence, even if the preponderance of the evidence weighs against it. *Id.* at 1158–59. However, we will not "affirm simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). We may not decide the facts anew, make credibility determinations, or reweigh the evidence. *Moore*, 405 F.3d at 1211. We review de novo the district court's determination as to whether the ALJ's decision was supported by substantial evidence. *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam).

## II.

An individual seeking disability insurance benefits must prove that she is disabled. *Moore*, 405 F.3d at 1211. Social Security regulations outline a five-step sequential analysis to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ must evaluate whether a claimant: (1) is unable to engage in substantial gainful activity; (2) has a severe physical or mental impairment; (3) has such an impairment that meets or equals a listed impairment and meets the duration requirements; (4) can perform her past relevant work, in light of her residual functional capacity (RFC); and (5) can make an adjustment to other work, in light of her RFC, age, education, and work experience, that is available in the national economy. *Id.*; *Phillips v. Barnhart*, 357 F.3d 1232, 1237

(11th Cir. 2004). If the ALJ determines that the claimant is not disabled at any step of the evaluation process, the inquiry ends. § 404.1520(a)(4).

At step four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. *Phillips*, 357 F.3d at 1238. The ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).

At step five, the burden temporarily shifts to the Social Security Administration (SSA) to show the existence of other jobs in the national economy that the claimant can perform, given her impairments. *Washington*, 906 F.3d at 1359. The ALJ thus must determine, in light of the Dictionary of Occupational Titles (DOT) and the vocational expert's (VE) testimony, "whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of his impairments." *Id.* at 1360.[2]

---

[2] Here, the ALJ found at step one that Buckwalter was not engaged in substantial gainful activity. At steps two and three, the ALJ found that she did not have a medically determinable impairment that is "severe" nor a combination of impairments that meet or medically equal the criteria for being disabled. At step four, the ALJ found that Buckwalter could not perform her past work but had the RFC to "understand, carry-out, and remember simple instructions[,] . . . make simple work-related decisions[, and] occasionally deal with supervisors, co-workers, and the public." Finally, the ALJ determined at step five that there were jobs she could perform, considering her circumstances, that exist in significant numbers in the national economy. Therefore, considering all the evidence in the record—including the testimony of Buckwalter, her mother, and the VE, and the reports of doctors and other professionals—the ALJ concluded that Buckwalter was not disabled.

According to Social Security Ruling 00-4P (SSR 00-4P), neither the VE's testimony nor the DOT automatically trumps when there is a conflict between the two. SSR 00-4P, 65 Fed. Reg. 75759-01, 75760 (Dec. 4, 2000). Instead, where a VE provides evidence about a job's requirements, the ALJ has an affirmative duty to inquire about any possible conflict between that evidence and information provided in the DOT. *Id.* Where the VE's evidence is inconsistent with the information in the DOT, the ALJ must resolve the conflict before relying on the VE's evidence to support a determination that a claimant is or is not disabled. *Id.* Although SSR 00-4P is not binding on this court, the SSA is nevertheless bound to follow it. *Washington*, 906 F.3d at 1361.

In *Washington*, we held that SSR 00-4P imposes upon ALJs an affirmative duty to identify apparent conflicts and resolve them. *Id.* at 1362. This duty is "not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT." *Id.* An ALJ's failure to discharge this duty means a decision is not supported by substantial evidence. *Id.* Specifically, the ALJ must: (1) identify any "apparent" conflicts, regardless of whether that conflict is brought to the ALJ's attention by the parties or the VE; (2) explain any discrepancy between the VE's testimony and the DOT; and (3) detail in the decision how that discrepancy was resolved. *Id.* A conflict is apparent if it is "apparent to an ALJ who has ready

6

access to and a close familiarity with the DOT." *Id.* at 1366. If the "conflict is reasonably ascertainable or evident," the ALJ must identify it. *Id.* Apparent means "seeming real or true, but not necessarily so." *Id.*

*Washington* presented "one of the clearest examples of an 'apparent conflict.'" *Id.* There, the claimant suffered nerve damage from his diabetes that caused pain and numbness in his extremities and diminished his visual acuity. *Id.* at 1356. At step five of the sequential analysis, the ALJ asked the VE whether jobs existed in the national economy for someone who could only engage in "occasional" fine manipulation. *Id.* at 1366. The VE identified two jobs that the DOT described as involving "frequent" fine manipulation. *Id.* We characterized the conflict as apparent because the difference between the ability to perform a task "occasionally" and "frequently" is "patent and significant in determining whether work exists in the national economy for a claimant." *Id.* Because "the conflict [was] manifest from even a cursory, side-by-side comparison of the VE's testimony and the DOT," the ALJ "unmistakably breached his duty." *Id.*

## A.

Buckwalter argues that the ALJ's decision was unsupported by substantial evidence because the ALJ failed to resolve the apparent conflict between the VE's testimony and the DOT regarding the jobs that Buckwalter could perform. Specifically, she alleges that the ALJ's finding that she could perform jobs that

7

require an individual to be able to follow "detailed but uninvolved" instructions conflicts with the ALJ's finding that she was only capable of carrying out simple instructions.

The ALJ relied on the VE's testimony that Buckwalter could perform three unskilled positions: laundry worker, janitor, and store laborer. Each of these positions has a DOT reasoning level of two. *Dictionary of Occupational Titles* §§ 361.685-018, 381.687-018, 922.687-058. A position with a reasoning level of two requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions" and "[d]eal with problems involving a few concrete variables in or from standardized situations." *Id.* app. C. By contrast, reasoning level one requires the ability to "[a]pply commonsense understanding to carry out simple one- or two-step instructions" and "[d]eal with standardized situations with occasional or no variables in or from these situations encountered on the job." *Id.* Reasoning level three requires the ability to "[a]pply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form" and to "[d]eal with problems involving several concrete variables in or from standardized situations." *Id.*

The VE confirmed that her testimony about Buckwalter's potential jobs was consistent with the DOT. But Buckwalter asserts that, to the contrary, her RFC allowed her only to "understand, carry-out, and remember simple instructions" and

this conflicts with DOT reasoning level two.

Buckwalter contends that the conflict here was apparent, so the ALJ had a duty under *Washington* to resolve it. She further argues that because the ALJ failed to do so, the decision was not supported by substantial evidence. The Commissioner responds that the ALJ did not err because there was no apparent conflict. The ability to follow "detailed" instructions in reasoning level two is qualified by the requirement that those instructions be "uninvolved," which denotes a lack of complexity—so it does not conflict with "simple."

The Commissioner also urges this Court to follow the reasoning of the Eighth Circuit in *Moore v. Astrue*, 623 F.3d 599 (8th Cir. 2010), and the Fourth Circuit in *Lawrence v. Saul*, 941 F.3d 140 (4th Cir. 2019). Both circuits found that there is no apparent conflict between a limitation to simple instruction and jobs with a reasoning level of two. However, Buckwalter argues that these out-of-circuit cases are distinguishable, and in the alternative, wrongly decided.

## B.

The ALJ did not err. There is not an apparent conflict here between Buckwalter's RFC, which limits her to the ability to "understand, carry-out, and remember simple instructions," and the identified positions with a reasoning level of two. While it is a close question, the two terms can be readily reconciled, so we

9

follow the Fourth and Eighth Circuits and hold that there is no apparent conflict.

Although there is potentially tension between Buckwalter's limitations to simple instructions and reasoning level two, that tension does not rise to the level of an "apparent" conflict as we have defined it. *See Washington*, 906 F.3d at 1366 (defining "apparent" as "reasonably ascertainable or evident").

Unlike the contradiction between the terms "occasionally" and "frequently" at issue in *Washington*, "simple" does not plainly contradict "detailed." The text of the DOT levels supports this conclusion:

- Level One: "Apply commonsense understanding to carry out simple one- or two-step instructions;"

- Level Two: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions;"

- Level Three: "Apply commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form."

The primary difference between levels one and two is the *length* of the instructions—not the complexity. While level one specifies that the instructions must be "simple," level two similarly specifies that they must be "uninvolved." Merriam-Webster defines "simple" as "readily understood or performed;" it defines "uninvolved" as "not involved," meaning not "marked by extreme and often needless or excessive complexity." *Simple*, *Uninvolved*, *Involved*, Merriam-

10

Webster's Online Dictionary, https://www.merriam-webster.com. "Simple" is listed as an antonym for "involved." *Id.* Accordingly, the difference between levels one and two lies in the *length* of the instructions, with level one being limited to one- or two-step instructions, and level two not being limited in length. This interpretation is confirmed by the description of level three, which lifts the restriction on how complex the instructions can be—allowing for any "instructions."

The Fourth and Eighth Circuits adopted a similar interpretation, reasoning that there was no apparent conflict in such a situation because "detailed" indicates length rather than complexity, and "uninvolved" also denotes a lack of complexity. *Lawrence*, 941 F.3d at 143–44; *Moore*, 623 F.3d at 605.

In *Moore v. Astrue*, the Eighth Circuit determined that there was no direct conflict between an RFC that limited a claimant to "carrying out simple job instructions" and "performing simple, routine, and repetitive work activity at the unskilled task level," and jobs with a reasoning level of two. 623 F.3d at 604–05 (internal quotation mark omitted). The court reasoned that an individual with such an RFC could carry out "uninvolved" instructions because that word denoted a lack of complexity or intricacy. *Id.* at 604. Notably, the ALJ had not limited the claimant to "simple one- or two-step instructions" or otherwise indicated that the claimant could only perform at reasoning level one. *Id.*

11

The *Moore* court also noted that the level two reasoning definition represents an *upper* limit on all jobs in the occupational category—it does not set a base-level requirement for every job within the category. *Id.* ("The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities.") (quoting *Wheeler v. Apfel*, 224 F.3d 891, 897 (8th Cir. 2000)). Nothing in the record suggested that the VE did not take into account the reasoning limitations when proposing suitable jobs. *Id.*

In *Lawrence v. Saul*, the Fourth Circuit applied similar reasoning and arrived at the same conclusion for a claimant with an RFC that limited them to "simple, routine repetitive tasks of unskilled work." 941 F.3d at 143–44. The Fourth Circuit also noted that its holding was in line with every other federal circuit to address the issue, citing *Moore* along with unpublished decisions by the Tenth Circuit, Ninth Circuit, Seventh Circuit, Third Circuit, and this court. *Id.* at 144 n.8.

Here, Buckwalter's limitation to jobs involving the ability to "understand, carry-out, and remember simple instructions" and to "make simple work-related decisions" is similar to the limitations at issue in *Lawrence* and *Moore*. Moreover, Buckwalter's limitation to making "simple work-related decisions" suggests that she retained an ability to make routine decisions independently, which aligns with

12

the ability to "[d]eal with problems involving a few concrete variables" in reasoning level two. *See* DOT app. C.

Even so, some of the medical records suggest that Buckwalter is not capable of following detailed instructions due to her impaired memory and concentration. For example, one non-treating physician opined that Buckwalter would have difficulty with some detailed tasks, and a rehabilitation counselor's evaluation indicated that she had trouble hearing or processing even simple directions and required directions to be repeated multiple times. Although this evidence might have been relevant for determining Buckwalter's limitations in her RFC in the first instance, she does not challenge that determination on appeal. And even so, it does not bear directly on the legal question of whether there is a conflict between her limitations and reasoning level two. *See Washington*, 906 F.3d at 1366. Therefore, there was no apparent conflict between the VE's testimony and the DOT. We affirm as to this issue.

## III.

Buckwalter additionally argues that the ALJ's decision was not supported by substantial evidence because the ALJ found that she had only *mild* limitations in the area of concentration, persistence, and pace despite giving "great weight" to the opinions of two non-treating physicians, who both found that she had *moderate*

limitations in that area.

In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional areas known as "Paragraph B" criteria. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (per curiam). The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. 20 C.F.R. § 404.1520a(c)(3). The third category—the one at issue here—refers to one's abilities "to focus attention on work activities and stay on task at a sustained rate," including things like initiating and performing tasks, working at an appropriate pace, sustaining an ordinary routine, and regular attendance. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(E)(3).

The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning. 20 C.F.R. § 404.1520a(c)(4). The ALJ must explain the results of this inquiry in the findings and conclusions. *Moore*, 405 F.3d at 1213–14. To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an "extreme" limitation in one of the four functional areas or a "marked" limitation in two. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b).

A "mild" rating indicates that the claimant's functioning is "slightly

14

limited;" a rating of "moderate" indicates a "fair" limitation. *Id.* § 12.00(F)(2)(b), (c). The ALJ uses all "relevant medical and non-medical evidence" in evaluating a claimant's mental disorder, including information about the claimant's daily activities at home and in the community. *Id.* § 12.00(F)(3)(a)–(b).

The ALJ's analysis as to the Paragraph B criteria is part of steps two and three of the sequential analysis; it is distinct from the more detailed inquiry as to a claimant's RFC at step four. *Winschel*, 631 F.3d at 1180. But though the analysis at steps two and three is less detailed, an ALJ is still required to account for a claimant's moderate limitation in the area of concentration, persistence, or pace in a hypothetical posed to the VE. *Id.* at 1180–81.

Buckwalter contends that the ALJ's findings were not supported by substantial evidence because despite giving "great weight" to the opinions of two doctors, the ALJ—without explanation—made a different finding on her impairment in one functioning area. The Commissioner disagrees, arguing that the ALJ specifically gave great weight to the portions of the doctors' opinions regarding Buckwalter's work-related mental limitations—which included the assessments that Buckwalter had moderate limitations in the areas of concentration, persistence, or pace—*not* the portions concerning the Paragraph B ratings.

We agree with the Commissioner. The ALJ's weighing of the opinions of

15

the non-treating physicians did not undermine the substantial evidence supporting his decision. The ALJ gave great weight to the doctors' opinions in the context of evaluating Buckwalter's RFC, not in assessing the Paragraph B criteria at steps two and three of the sequential analysis—which is a distinct inquiry. *See id.* at 1180; 20 C.F.R. § 404.1520(a).

Furthermore, the ALJ's determination that Buckwalter was mildly limited in the area of concentrating, persisting, or maintaining pace was adequately explained and is supported by substantial evidence. In particular, the ALJ found that Buckwalter's daily activities indicated her ability to concentrate, persist, and maintain pace. Buckwalter stated in one report that she had no trouble with personal care, was able to drive a car to the store to purchase cigarettes every few days, and was able to perform light yardwork. Her medical records indicate that she assisted her family with household chores, and she testified that she usually had no trouble going to the store with her family.

These activities evidenced an ability to maintain a routine and initiate regular tasks. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F)(3)(a)–(b). In addition, her medical records indicated that, on nearly all her visits, Buckwalter was alert and fully oriented, polite and cooperative, and her judgment and insight were intact. These observations all bear on her ability to concentrate and work with

16

others. *See id.* § 12.00(E)(3).

To be sure, there is evidence in the record showing that Buckwalter was impaired in her ability to perform complex tasks, concentrate, and remember instructions; that could arguably be characterized as a "fair" limitation. *See id.* § 12.00(F)(2). But the other evidence discussed above amounted to substantial evidence to support the ALJ's decision. *See Crawford*, 363 F.3d at 1158–59. We therefore affirm as to this issue as well.

IV.

Finally, Buckwalter argues that the ALJ's decision was not supported by substantial evidence because he failed to properly weigh her processing speed score of 71 from Dr. Richard Sassatelli's evaluation. She asserts that the VE's testimony that a processing speed below the 86th percentile would prevent an individual from working suggests she was unable to sustain the necessary pace to hold a job.

So long as the ALJ's decision demonstrates to the reviewing court that it considered the claimant's medical condition as a whole, the ALJ is not required to cite every piece of evidence in the record. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).

Here, the decision is supported by substantial evidence. The record demonstrates that the ALJ adequately considered Buckwalter's processing speed

17

score by virtue of his consideration of Dr. Sassatelli's report and the other evidence bearing on her medical condition.

We reject Buckwalter's interpretation of the VE's testimony. In testifying regarding Buckwalter's "processing speed," the VE seemed to be referring to the percentage of time that a worker is off task rather than the processing speed score that was used to determine Buckwalter's Full Scale IQ (FSIQ).

In addition, the ALJ properly considered Dr. Sassatelli's report even though he did not specifically mention the processing speed score. The ALJ relied upon Dr. Sassatelli's assessment of Buckwalter's FSIQ at steps two and three of the sequential analysis. The ALJ also referenced Dr. Sassatelli's findings and opinions, including Buckwalter's FSIQ, in his RFC analysis. It was not necessary for the ALJ to discuss every facet of Dr. Sassatelli's report. The ALJ's decision shows that he considered the report in its entirety and Buckwalter's medical condition as a whole. We affirm.

V.

We find that substantial evidence supports the ALJ's decision to deny benefits to Buckwalter.

**AFFIRMED.**

18