[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-11862

_____

D.C. Docket No. 8:18-cv-02773-PDB

ANTONIO VIVERETTE,

　　　　　　　　　　　　　　　　Plaintiff - Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

　　　　　　　　　　　　　　　　Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(September 21, 2021)

Before JORDAN, BRASHER, and JULIE CARNES, Circuit Judges.

JORDAN, Circuit Judge:

　　The Dictionary of Occupational Titles, published by the Department of Labor,

contains descriptions of thousands of jobs available in the national economy, and is

used by the Commissioner of Social Security to adjudicate benefit applications by claimants. *See* 20 C.F.R. § 416.966(d)(1). As relevant here, the DOT specifies the general educational requirements, including the level of reasoning skills, required for each job. *See Estrada v. Barhart*, 417 F. Supp. 2d 1299, 1302 (M.D. Fla. 2006). Level 3 reasoning, according to the DOT, means the ability to "[a]pply commonsense understanding furnished in written, oral, or diagrammatical form [and to d]eal with problems involving several concrete variables in or from standardized situations." U.S. Dept. of Labor, Dictionary of Occupational Titles, App. C, § III, Components of the Definition Trailer, 1991 WL 688702 (4th ed. 1991).

Antonio Viverette appeals the district court's order affirming the decision of an administrative law judge denying his application for supplemental security income (SSI) benefits, pursuant to 42 U.S.C. § 1383(c). He argues that the ALJ erred in two ways: (1) ruling that he could perform a job with level 3 reasoning after finding that his residual functional capacity limited him to simple, routine, and repetitive tasks; and (2) basing the number of available jobs on unreliable vocational expert testimony.

Whether there is an apparent conflict between a limitation to simple, routine, and repetitive tasks and level 3 reasoning is a question that has divided some of our sister circuits, and is one of first impression for us. We now join the Fourth, Ninth, and Tenth Circuits and hold that there is an apparent conflict between a limitation to

2

simple, routine, and repetitive tasks and the demands of level 3 reasoning. Because the ALJ did not address that apparent conflict—as required by our precedent—and because we cannot say that the error was harmless, we reverse and remand for further proceedings before the ALJ.

## I

Mr. Viverette applied for SSI benefits on July 27, 2015, alleging a disability onset date of January 1, 1999, when he was 24 years old. He listed five conditions limiting his ability to work: (1) a below-the-knee left leg amputation; (2) diabetes; (3) arthritis; (4) pain in his lower back; and (5) "slow learning." He also indicated that he only completed 7th grade and never worked. The Social Security Administration rejected Mr. Viverette's claim for SSI benefits. After the SSA denied reconsideration, Mr. Viverette requested a hearing before an ALJ.

## A

Before the hearing, Mr. Viverette submitted school, prison, and medical records to document his limitations. For example, Dr. Fred L. Alberts, Jr. stated in his report that Mr. Viverette had a 7th-grade education level, and that his "[a]ttention and concentration were consistent with his Extremely Low range of intellectual functioning." Dr. Eniola Owi wrote in her report that Mr. Viverette had a "[h]istory of type 2 Diabetes mellitus," "S/p BKA Lt leg due to crush injury," and "[r]esidual limp with prosthesis."

3

At a hearing before the ALJ in October of 2017, Mr. Viverette testified that he was in prison awaiting trial on several charges. He had a driver's license and could drive. He started the 8th grade but dropped out before finishing. In school, he had trouble "[c]omprehending, reading and writing," and "was a slow learner." He had never been employed. When asked the reason, he said that he "never had the education to work" and he "just didn't never know how to fill out an application."

Mr. Viverette explained that his mother, who had passed away right before he went to jail, "did everything for" him. When asked if he thought that he could do his laundry himself, he responded "I ain't never done it." When asked what his average day was like before he went to jail, i.e., "did [he] do anything," he said that "[he] could try." That was "the only thing [he could] tell" the ALJ, and he was unable to give a definite "answer because [he] always had [his] mom and dad take care of [him]." He had a child whom he did not see, as she was taken away from him.

As to his physical condition, Mr. Viverette testified that he wore a prosthesis, which was "messed up" at the time. His stump had been "bad" since he was in jail and was "a little red." He wore his prosthesis when he had to walk and, when he was not wearing it, he sat on his prison bed. He had been to prison multiple times and said "yes" when asked if he had "a low bunk pass or . . . [was] exempt from doing work." He "walk[ed] with a limp" and "ha[d] bad back pains."

4

When asked if he thought that he could do "a job where [he was] sitting all day long, and . . . just doing simple, routine work like putting things together, like assembly type of work," Mr. Viverette said "[y]es, sir, if [he] underst[oo]d how to do it because [his] education [was] not really good." If he "had a sit down job," he could wear his prosthesis the entire time and he thought that he "could be on [his] feet an hour a day." In response to a question about whether he could read and write, he said that he could "comprehend it a little bit" and "read and write a little." As to his math capabilities, he indicated that he could do "a little."

**B**

A claimant is disabled for purposes of SSI benefits when he is unable "to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). The Social Security regulations set out a five-step, sequential evaluation process for determining whether a claimant is disabled for purposes of SSI benefits. *See* § 416.920(a)(1), (4). An ALJ must evaluate whether (1) the claimant was engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the severe impairment meets or equals an impairment listed by the SSA; (4) the claimant has the residual functional capacity (RFC) to perform past relevant work; and (5) there are other jobs the claimant could perform given his RFC,

5

age, education, and work experience. *See* §§ 416.920(a)(4)(i)–(v).  An "RFC [is] that which an individual is still able to do despite the limitations caused by his or her impairments." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004).

At steps one and two, the ALJ found that Mr. Viverette had not engaged in substantial gainful activity since his application date and had a number of severe impairments (obesity, remote bilateral hip fracture, below-knee amputation of his left leg, diabetes mellitus, borderline intellectual functioning, depressive disorder, and cocaine dependence currently in remission).  At step three, however, the ALJ found that Mr. Viverette lacked "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."

The ALJ found at step four that Mr. Viverette had the RFC "to perform sedentary work" subject to certain restrictions, including (i) not operating left leg foot controls; (ii) "occasionally climb[ing] ramps and stairs but . . . never climb[ing] ladders or scaffolds;" and (iii) "occasionally stoop[ing], kneel[ing], crouch[ing or] crawl[ing]" but never "working at unprotected heights or operating motor vehicle[s]."  The ALJ specifically found that he was "limited to simple, routine, and repetitive tasks" and "simple work-related decisions," but could "frequently interact with supervisors, coworkers and the general public."

6

Finally, at step five, the ALJ found that there were jobs that existed in significant numbers in the national economy that Mr. Viverette can perform. The ALJ noted that the vocational expert (VE) testified that Mr. Viverette "would be able to perform the requirements of representative occupations," such as document preparer, with about 104,000 jobs nationally; final assembler, with about 7,000 jobs nationally; and check weigher, which had about 14,000 jobs nationally. These jobs, and their estimated numbers, were drawn from groups set out in the Standard Occupation Classification (SOC) system.[1]

According to the DOT, the occupation of document preparer requires level 3 reasoning. The occupations of final assembler and check weigher, on the other hand, require level 1 reasoning.

When the Appeals Council declined to review the ALJ's decision, Mr. Viverette filed suit in federal court. The district court concluded that Mr. Viverette was not disabled and that any alleged error by the ALJ in failing to address a potential conflict between Mr. Viverette's limitations and level 3 reasoning as to the document preparer position was harmless due to the availability of other positions (i.e., final assembler and check weigher).

---

[1] SOC groups do not have a one-to-one match to DOT occupations. *See generally Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1281 (11th Cir. 2020) (describing the problem). The SOC group for check weigher, for example, contains many DOT occupations, some of which may require level 3 reasoning. The VE offered no additional testimony distinguishing which DOT occupations within each SOC group met Mr. Viverette's RFC and specific limitations.

## II

Where an "ALJ denies benefits and the [Appeals Council] denies review, we review the ALJ's decision as the Commissioner's final decision." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). On the factual side, we determine whether the ALJ's decision is supported by substantial evidence. On the legal side, we review questions of law de novo. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

"Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* Nevertheless, substantial evidence requires "more than a scintilla." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). In reviewing for substantial evidence, we "may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [ALJ]." *Id.* "Even if the evidence preponderates against the [ALJ's] findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).

## III

In *Washington v. Commissioner of Social Security*, 906 F.3d 1353 (11th Cir. 2018), we considered the effect of Social Security Ruling (SSR) 00-4p, 2000 WL 1898704 (Dec. 4, 2000), which addresses what ALJs must do to resolve conflicts

8

between the DOT and expert testimony.  We held in *Washington* that "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT."  906 F.3d at 1362.  *See also id.* at 1365 ("SSR 00-4p is properly understood to impose an affirmative duty on the ALJs to identify apparent conflicts, ask the VE about them, and explain how the conflict was resolved in the ALJ's final decision.").  A conflict is "apparent," we explained, when it is "reasonably ascertainable or evident," i.e., when it is "seeming[ly] real or true, but not necessarily so."  *Id.* at 1366 (citation and internal quotation marks omitted).

We concluded in *Washington* that there was an apparent conflict between the DOT, which indicated that certain positions required "frequent" fine manipulation, and a VE's testimony that a claimant who could only engage in "occasional" fine manipulation could perform such jobs.  *See id.*  "The difference between the ability to occasionally perform a task and frequently perform a task," we explained, "is patent and significant in determining whether work exists in the national economy for a claimant."  *Id.*  Because the ALJ had not identified and resolved this apparent conflict, and thereby "breached his duty," we reversed and remanded.  *See id.* at 1366–67.

9

Recently, in *Buckwalter v. Acting Commissioner of Social Security*, 5 F.4th 1315 (11th Cir. 2021), we held that there is no apparent conflict between a claimant's RFC to understand, carry out, and remember simple instructions and level 2 reasoning, which requires the ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." 5 F.4th at 1323–24. Although we acknowledged a "potential[] tension," and described the matter as a "close question," we ruled that the two concepts could be readily reconciled. *Id.* at 1323. We followed the decisions of the Fourth and Eighth Circuits and concluded that "'detailed' indicates length rather than complexity, and 'uninvolved' also denotes a lack of complexity." *Id.* (citing *Lawrence v. Saul*, 941 F.3d 140, 143–44 (4th Cir. 2019), and *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010)).

This case is one step beyond *Buckwalter*. The question we face is whether there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning.

## A

At step four of the analysis, the ALJ found that Mr. Viverette's RFC is limited to simple, routine, and repetitive tasks. At step five, the ALJ—relying on the testimony of the VE—listed "document preparer" as one of the representative jobs that Mr. Viverette could perform in the national economy.

The DOT defines the duties of a document preparer in the following way:

Prepares documents, such as brochures, pamphlets, and catalogs, for microfilming, using paper cutter, photocopying machine, rubber stamps, and other work devices: Cuts documents into individual pages of standard microfilming size and format when allowed by margin space, using paper cutter or razor knife. Reproduces document pages as necessary to improve clarity or to reduce one or more pages into single page of standard microfilming size, using photocopying machine. Stamps standard symbols on pages or inserts instruction cards between pages of material to notify MICROFILM-CAMERA OPERATOR (business ser.) 976.682-022 of special handling, such as manual repositioning, during microfilming. Prepares cover sheet and document folder for material and index card for company files indicating information, such as firm name and address, product category, and index code, to identify material. Inserts material to be filmed in document folder and files folder for processing according to index code and filming priority schedule.

DOT, § 249.587-018. As noted, the DOT provides that the position of "document preparer" requires level 3 reasoning. *See id*.

The DOT defines level 3 reasoning as the ability to "[a]pply commonsense understanding furnished in written, oral, or diagrammatical form [and to d]eal with problems involving several concrete variables in or from standardized situations." DOT, App. C, § III, 1991 WL 688702. We explained in *Buckwalter* that level 3 reasoning is different than level 1 and level 2 reasoning because it "lifts the restrictions on how complex the instructions can be—allowing for any 'instructions.'" *Buckwalter*, 5 F.4th at 1323.

**B**

The Seventh and Eighth Circuits have held that there isn't an apparent conflict between a limitation to simple tasks and level 3 reasoning. *See, e.g., Terry v. Astrue*,

11

580 F.3d 471, 478 (7th Cir. 2009); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007); *Hillier v. Soc. Sec. Admin.*, 486 F.3d 359, 367 (8th Cir. 2007). The Fourth, Ninth, and Tenth Circuits, however, have come to the opposite conclusion. *See Keller v. Berryhill*, 754 F. App'x 193, 197 (4th Cir. 2018); *Zavalin v. Colvin*, 778 F.3d 842, 847 (9th Cir. 2015); *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005).[2]

For a number of reasons, we conclude that the view of the Fourth, Ninth, and Tenth Circuits is more persuasive. That view is also more in line with our understanding of the concept of apparent conflict as set out in *Washington*.

First, it seems to us from a side-by-side comparison that there is an apparent conflict under *Washington* between an RFC to simple, routine, and repetitive tasks and level 3 reasoning, which requires the ability to apply commonsense understanding furnished in written, oral, or diagrammatical form and to deal with problems involving several concrete variables in or from standardized situations. As the Tenth Circuit put it: "This limitation seems inconsistent with the demands of level 3 reasoning." *Hackett*, 395 F.3d at 1176. *See also Keller*, 754 F. App'x at 197–98 ("A limitation to short and simple instructions appears more consistent with

---

[2] Like the circuits, the district courts are also divided on the question. *Compare, e.g., Lori P. v. Comm'r of Soc. Sec.*, No. 2:19-cv-00193, 2021 WL 1207456, at *8 (D. Vt. Mar. 31, 2021), and *Graves v. Saul*, No. 7:18-cv-00177-O-BP, 2020 WL 896669, at *4 (N.D. Tex. Feb. 25, 2020), *with, e.g., Ferguson v. Berryhill*, 381 F. Supp. 3d 702, 708 (W.D. Va. 2019), and *Estrada*, 417 F. Supp. 2d at 1303–04.

Reasoning Development Level 1 or Level 2 than with Level 3.  Indeed, it seems that such a limitation falls somewhere between Levels 1 and 2.") (citations and footnote omitted).

Second, we agree with the Ninth Circuit's analysis: "[A] limitation to simple, routine tasks is at odds with Level 3's requirements because it may be difficult for a person limited to simple, repetitive tasks to follow instructions in diagrammatic form as such instructions can be abstract." *Zavalin*, 776 F.3d at 847 (citation and internal quotation marks omitted).  Furthermore, "there is no rigid correlation between reasoning levels and the amount of education that a claimant has completed.  While . . . educational background is relevant, the DOT's reasoning levels clearly correspond to the claimant's *ability* because they assess whether a person can 'apply' increasingly difficult principles of rational thought and 'deal' with increasingly complicated problems." *Id.* (citation omitted).  For similar reasons, the SSA has told its VEs that "[t]here is an apparent conflict between a job that requires . . . level 3 [reasoning] and a hypothetical individual [who] can perform only 'simple' or 'repetitive' tasks." *See* SSA, Office of Hearing Operations, Office of the Chief ALJ, Vocational Expert Handbook 39 (June 2020).

Third, the Seventh and Eighth Circuits based their contrary decisions in part on evidence in the record that the claimant had performed similar (or identical) level 3 reasoning jobs in the past or had the cognitive capacity to do so.  In *Terry*, the

13

Seventh Circuit reasoned that the claimant "d[id] not argue that she cannot perform [level 3 reasoning skills], perhaps because the record suggests she can: she finished high school, completed training to become a certified nurse's assistant, and has the cognitive capacity to follow simple instructions." 580 F.3d at 478. The Eighth Circuit acknowledged in *Hillier* that "in the abstract tension exists between only being able to understand, remember, and follow simple, concrete instructions and working as a cashier [a level 3 reasoning occupation]," but explained that it did "not decide cases in the abstract," and noted that the claimant had previously worked as a cashier for Wendy's and the Salvation Army. *See* 486 F.3d at 367. This evidence demonstrated that the claimant "ha[d] the mental capacity to work as a cashier." *Id.* The record here is far different. Mr. Viverette did not finish eighth grade, has never worked, and can read, write, and do math only a "little." The decisions of the Seventh and Eighth Circuits, therefore, are distinguishable on their facts.

Fourth, the substantive analysis of the Seventh Circuit in *Terry* gives us pause. The Seventh Circuit analyzed the claimant's ability to "perform only 'simple' work" and concluded that she retained the capacity to reason at level 3 in part because she could "follow simple instructions." *Terry*, 580 F.3d at 478. Level 3 reasoning, however, requires more than the ability to carry out simple instructions. As we explained in *Buckwalter,* level 3 reasoning "lifts the restrictions on how complex the instructions can be—allowing for any 'instructions.'" *Buckwalter*, 5 F.4th at 1323.

14

*Terry*, in other words, may have relied on an incorrect (or at least incomplete) understanding of level 3 reasoning.

Fifth, in a more recent decision the Eighth Circuit has explained that an apparent conflict can exist in certain situations where the claimant is limited to simple tasks and a listed occupation demands level 3 reasoning. In *Thomas v. Berryhill*, 881 F.3d 672, 676–77 (8th Cir. 2018), the ALJ found that the claimant had an RFC limiting her to one- to two-step tasks and concluded that she was not disabled at step five because she could perform the job of a new accounts clerk. Because the position of new accounts clerk requires level 3 reasoning under the DOT, the Eighth Circuit held that there was an apparent conflict and remanded for the ALJ to address the matter. "An apparent conflict . . . existed between the [VE's] testimony that someone limited to '[one] to [two] step tasks' could work as a new accounts clerk and the DOT description that being such a clerk involves a higher level of reasoning [i.e., level 3 reasoning]. Because that conflict was 'apparent' and not just 'possible,' the ALJ needed to do more than have the [VE] affirm that his testimony was consistent with the DOT." *Id.* at 678. Given its decision in *Thomas*, the Eighth Circuit has moved closer to (if not aligned itself) with the position of the Fourth, Ninth, and Tenth Circuits.

We hold, therefore, that that there is an apparent conflict between an RFC limitation to simple, routine, and repetitive tasks and level 3 reasoning, and in doing

15

so join the decisions of the Fourth, Ninth, and Tenth Circuits. This does not mean that there is an actual conflict or that an ALJ is categorically prohibited from including a job with level 3 reasoning in the step five analysis for a claimant with such a limitation. It does mean that the ALJ is required to address the apparent conflict and provide a reasonable explanation for her determination. *See Washington*, 906 F.3d at 1366 ("This doesn't mean that the VE [or ALJ were] wrong, but it does mean that there was a conflict, it was apparent, and it was important.").

**IV**

The ALJ's failure to address the apparent conflict, however, is not the end of the matter. Although the document preparer position is out of the equation for now, *see Buckwalter*, 5 F.4th at 1321 (the failure to address an apparent conflict means that an ALJ's decision is not supported by substantial evidence), the Commissioner urges us to conclude—as did the district court—that the error was harmless. According to the Commissioner, the ALJ also found that Mr. Viverette could work as a final assembler or a check weigher (both of which require level 1 reasoning), and the VE testified that there are 7,000 and 14,000 jobs nationally available for those positions. *See generally Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."); *Washington*, 906 F.3d at 1366 (holding that the ALJ's failure to address an apparent conflict was not harmless).

16

On this record, we cannot conclude that the ALJ's failure to address the apparent conflict as to the document preparer position was harmless. In the words of *Washington*, "[w]e can't disregard the error"—the failure to address the apparent conflict—"on the grounds that no conflict in fact existed." 906 F.3d at 1366. Our conclusion, moreover, remains the same even if we dig deeper.

At step five, an ALJ must "ascertain whether [the] jobs [that a claimant can perform] 'exist[ ] in significant numbers in the national economy.'" *Biestek v. Berryhill*, 139 S.Ct. 1148, 1152 (2019) (quoting 20 C.F.R. §§ 404.1560(c)(1) & 416.960(c)(1)). *See also Barnhart v. Thomas*, 540 U.S. 20, 25 (2003); *Winschel*, 631 F.3d at 1180. As noted, the VE testified that there are 104,000 document preparer positions available nationally, 7,000 final assembler positions available nationally, and 14,000 check weigher positions available nationally. The ALJ referenced this testimony collectively and concluded that Mr. Viverette "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." D.E. 13-2 at 32. But she apparently treated the three occupations (one of which we must here assume is off the table) cumulatively for purposes of the "significant numbers" determination, for she did not make any findings about how many jobs were available in the national economy for each of the occupations. In other words, the ALJ did not make a finding about how many final assembler or check weigher jobs were available nationally or whether the

17

number of final assembler and check weigher jobs, either separately or cumulatively, constituted a significant number, absent the document preparer jobs.

"Whether there are a significant number of jobs a claimant is able to perform with his limitations is a question of fact to be determined by a judicial officer [i.e., the ALJ]." *Martinez v. Heckler*, 807 F.2d 771, 775 (9th Cir. 1986). *See also Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005) ("The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number.") (citing *Martinez* with approval). Here, the ALJ based her finding of fact on the VE's testimony about a total number of 125,000 jobs, without considering an apparent conflict that affected 104,000 of those jobs. Given that over eighty percent of the jobs presented to the ALJ are affected by the apparent conflict and that we are reviewing the decision of the ALJ (on behalf of the Commissioner) for substantial evidence, we are hesitant to make any factual determinations ourselves about whether the final assembler or check weigher positions exist in significant numbers in the national economy. Where additional (or more specific) agency fact-finding is needed, remand is the appropriate disposition. *See Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004) ("[J]udicial line-drawing in this context is inappropriate, [because] the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation, and . . . [because] the evaluation 'should ultimately be left to the ALJ's common sense in weighing the

18

statutory language as applied to a particular claimant's factual situation.'") (citation omitted).[3]

Even if we thought that the ALJ had made specific findings about the number of final assembler and check weigher jobs available in the national economy, and about whether those numbers were significant, our recent decision in *Goode v. Comm'r of Soc. Sec*, 966 F.3d 1277 (11th Cir. 2020)—issued after the district court's decision—counsels in favor of remand. In *Goode*, the VE testified there were 43,000 bakery worker jobs nationally and 1,000 such jobs regionally based on the closest matching SOC code for that DOT occupation. This SOC code, however, covered 65 DOT jobs, only one of which the claimant was actually capable of performing. Because the VE never took the additional step of approximating how many of those specific jobs within the SOC code the claimant could perform, we found that the testimony was unreliable. As a result, the ALJ's decision was not supported by substantial evidence. *See id.* at 1283–84.

In Mr. Viverette's case the VE testified that there were 14,000 check weigher jobs nationally, but on cross-examination stated that this number included the total

---

[3] The Tenth Circuit faced a very similar situation in *Kimes v. Comm'r of Soc. Sec.*, 817 F. App'x 654 (10th Cir. 2020), and remanded for the ALJ to make specific findings about the number of jobs available nationally for a specific occupation: "In determining whether the 'significant numbers' requirement was satisfied, the ALJ considered both jobs together, for a total of 96,000 jobs. He did not consider whether [the occupation of] industrial cleaner, alone, with only 16,000 jobs, satisfies the requirement. It is not for this court to decide, in the first instance, whether a relatively low number qualifies as a 'significant number' of jobs." *Id.* at 659. We find *Kimes* to be persuasive and follow its approach.

of sedentary unskilled jobs within the relevant SOC code.  Significantly, she also said that she did not know whether the other DOT occupations within the SOC code required level 1 or level 2 reasoning or something higher.  *See* D.E. 13-2 at 55–57.  Because we have now held that there is an apparent conflict between level 3 reasoning and a limitation to simple, routine, and repetitive tasks, and because the VE did not take the additional step mandated in *Goode* to estimate what portion of jobs within the relevant SOC code Mr. Viverette can perform, the 14,000 number for the check weigher position may be overstated.  As a result, a "remand [here] would [not] be an idle and useless formality." *N.L.R.B. v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969).[4]

## V

The judgment of the district court is reversed, with instructions that the case be remanded to the Commissioner for further proceedings.

**REVERSED AND REMANDED.**

---

[4] Mr. Viverette's counsel sought to ask the VE about the final assembler position, but the ALJ cut that questioning short because she had another hearing scheduled, and that hearing was already behind schedule. *See* D.E. 13-2 at 57–58.

20