[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————————

No. 23-11883

Non-Argument Calendar

————————————————

CARA LECROY,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Georgia
D.C. Docket No. 3:22-cv-00059-TES-MSH

————————————————

Before LAGOA, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

Cara LeCroy challenges the Commissioner of the Social Security Administration's ("Commissioner") denial of her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). LeCroy argues that the administrative law judge ("ALJ") erroneously assessed the medical opinions in the record. Specifically, LeCroy says the ALJ erred in finding that the opinions from LeCroy's treating sources were unpersuasive and the opinions from a consultative examiner and reviewer were persuasive. She also argues that the ALJ erroneously failed to consider her post-traumatic stress disorder ("PTSD"), social phobia, and panic disorder; her and her friend's subjective reports about her mental health; and her absenteeism due to receiving mental health treatment. For the reasons discussed below, we affirm.

## I.

When the ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the final administrative decision. *Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1313 (11th Cir. 2021). Our "review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see* 42 U.S.C. §§ 405(g), 1383(c)(3). Whether the

ALJ applied the proper legal standards is reviewed *de novo*. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1358 (11th Cir. 2018).

Substantial evidence means "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks omitted). The substantial-evidence threshold "is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Under this deferential standard, we do not "decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quotation marks omitted). To determine whether a decision was supported by substantial evidence, the reviewing court must look at the record as a whole, considering evidence that is favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Indeed, even if a preponderance of the evidence weighs against the Commissioner's decision, we will affirm so long as substantial evidence supports it. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). But we will not "affirm simply because some rationale might have supported the ALJ's conclusion." *Id.* (quotation marks omitted).

To determine whether a claimant is disabled, the ALJ considers, among other evidence, medical opinions, which are "statement[s] from a medical source about what [the claimant] can still do despite [her] impairment(s)," and prior administrative medical findings, which are "finding[s], other than the ultimate

determination about whether [the claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 416.913(a)(2), (5).[1] For claims filed on or after March 27, 2017, the ALJ will not defer or give any specific evidentiary weight to any medical opinion or prior administrative finding. *Id.* § 416.920c(a). Instead, the ALJ must determine the persuasiveness of medical opinions and prior administrative medical findings by considering five factors: (1) supportability; (2) consistency; (3) the provider's "[r]elationship with the claimant"; (4) specialization; and (5) "other factors" including, but not limited to, the provider's familiarity with other evidence in the claim and the provider's understanding of SSA program policies. *Id.* § 416.920c(c)(1)-(5). Supportability and consistency are the "most important" factors. *Id.* § 416.920c(b)(2). The ALJ is required to articulate how it considered the supportability and consistency factors, but not the remaining factors. *Id.* As to supportability, the more relevant the objective medical evidence and explanations are to the medical opinions, the more persuasive the opinion is. *Id.* § 416.920c(c)(1). As to consistency, the more

---

[1] Separate regulations govern eligibility for DIB and SSI. *Compare* 20 C.F.R. pt. 404 (DIB), *with* 20 C.F.R. pt. 416 (SSI). However, "[t]he regulations for both programs are essentially the same." *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see, e.g.*, 20 C.F.R. §§ 404.1520, 416.920 (setting out identical five-step sequential evaluation processes for evaluation of disability of adults); 20 C.F.R. §§ 404.1520c, 416.920c (setting out identical regulations for how the SSA considers medical opinions).

consistent a medical opinion is with evidence from other sources, the more persuasive the opinion is. *Id.* § 416.920c(c)(2).

Here, the ALJ properly considered the medical opinions of the treating and non-treating sources. The ALJ complied with the applicable regulation by articulating how he considered the supportability and consistency of the medical opinions and prior administrative medical findings, and substantial evidence supports the ALJ's weighing of their relative persuasiveness.

In particular, the ALJ considered the opinions of LeCroy's treating therapist, Janet Beasley, LPC, and concluded that Beasley's opinions were not persuasive because they were inconsistent with each other, her treatment notes, and the consultative examination findings. Beasley opined that LeCroy has abnormal recent and remote memory; abnormal insight, judgment, and impulse control; and abnormal ability to understand, remember, and carry out simple instructions. The ALJ rejected these contentions because they were not consistent with Beasley's treatment notes, the consultative examination findings, or Beasley's later opinion. Beasley's treatment notes reported that LeCroy appeared neat, clean, and well-groomed at her appointments, and other record evidence showed that LeCroy's memory and concentration abilities are intact and that she is able to comprehend and answer questions and follow instructions. The ALJ further found Beasley's opinion unpersuasive because Beasley stated she was not aware of LeCroy's ability to follow instructions or otherwise function in work situations, and that LeCroy has only a "fair" ability to maintain her

personal appearance and behave in an emotionally stable way—but other evidence showed that LeCroy's memory and concentration abilities are intact and that she demonstrates appropriate mood and affect. These latter observations are inconsistent with Beasley's opinion that LeCroy has only a fair ability to behave in an emotionally stable manner.

Similarly, the ALJ considered opinions from LeCroy's treating mental health provider, Dr. Ann Kesser, and found her unpersuasive. Dr. Kesser opined that LeCroy has a fair-to-poor ability to function in work situations and only a fair ability to follow simple instructions, maintain personal appearance, and behave in an emotionally stable manner. The ALJ found these opinions unpersuasive because LeCroy's mental health treatment notes do not support such limitations and, instead, indicate that LeCroy maintains a neat, clean, well-groomed appearance, and that her memory and concentration abilities are intact. The ALJ also noted that LeCroy's mental health treatment appeared effective, since she had not required mental health hospitalization "for many years."

On the other hand, the ALJ adequately explained why he found that Dr. John Grace, Dr. Robbie Ronin, and Dr. S. Kyle's opinions were all more persuasive. Dr. Grace, an independent consultative examiner, opined that LeCroy understands basic rules of social convention, can take and follow instructions, can respond adaptively to appropriate workplace criticism, and can make simple workplace decisions. He found LeCroy to be mildly impaired in her ability to concentrate and remain attentive throughout a

typical workday. The ALJ determined that these opinions were persuasive because they were consistent with the consultative examination findings and LeCroy's other records. Similarly, Dr. Ronin, a state agency psychologist, found that LeCroy has the ability to learn and remember locations and workplace procedures and to understand and remember detailed instructions. The ALJ was likewise persuaded by Dr. Ronin's opinions because LeCroy's mental health treatment notes and the consultative examiner's opinions supported Ronin's conclusions regarding LeCroy's ability to perform daily activities with no more than moderate limitations. And so too for Dr. Kyle's opinions. Dr. Kyle, a state agency psychologist, found that LeCroy could remember locations and workplace procedures, carry out simple instructions, and handle detailed, complex tasks. He further found that LeCroy would be able to adhere to a schedule, maintain regular attendance, and sustain an ordinary routine without special supervision and without becoming distracted by others around her. The ALJ found these opinions persuasive because Dr. Kyle's conclusions were supported by, and consistent with, LeCroy's mental health treatment notes, records regarding her ability to perform activities of daily living, and the opinions of the consultative examiner.

Substantial evidence supports the ALJ's finding that Dr. Kyle, Dr. Grace, and Dr. Ronin were persuasive, and that Beasley and Dr. Kesser were not. The former three opinions were consistent with each other, as they all agreed that LeCroy could perform daily activities despite her limitations and these conclusions were supported by LeCroy's medical records and the consultative

examination. And, as the ALJ explained, the latter two opinions were not persuasive because Beasley's opinions were inconsistent and neither Beasley's nor Dr. Kesser's opinions were supported by the records. We, therefore, reject LeCroy's contention that the ALJ failed to properly assess the persuasiveness of her providers' medical opinions.

## II.

An individual claiming Social Security disability benefits must prove that she is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Social Security regulations establish a five-step sequential evaluation process to determine whether a claimant is disabled for both SSI and DIB claims. *Id.* First, if a claimant is working at a substantial gainful activity, she is not disabled. 20 C.F.R. § 416.920(a)(4)(i). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to do basic work activities, then she is not disabled. *Id.* § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in the Listing of Impairments, she is disabled. *Id.* § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. *Id.* § 416.920(a)(4)(iv). Fifth, if a claimant's impairments—considering her residual functional capacity ("RFC"), age, education, and past work—prevent her from doing other work that exists in the national economy, then the claimant is disabled. *Id.* § 416.920(a)(4)(v).

Additionally, at step four, the ALJ must determine the claimant's RFC, which is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite h[er] impairments." *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019); 20 C.F.R. § 416.945(a)(1).  In formulating the RFC, the ALJ must account for all relevant medical evidence and other evidence.  *Buckwalter*, 5 F.4th at 1320; 20 C.F.R. § 416.945(a)(1).  In an RFC finding, the ALJ "must state with particularity the weight given to different medical opinions and the reasons therefor." *Buckwalter*, 5 F.4th at 1320-21 (quotation marks omitted).

A claimant's subjective complaints are insufficient to establish a disability on their own.  20 C.F.R. § 416.929(a).  Instead, objective medical evidence must show that the claimant has a medical impairment "which could reasonably be expected to produce the pain or other symptoms alleged" and that, when considered with all of the other evidence, "including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings," would lead to a conclusion that the claimant is disabled.  *Id.*  Accordingly, "to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson*, 284 F.3d at 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)).

The ALJ "has a basic obligation to develop a full and fair record. A full and fair record not only ensures that the ALJ has fulfilled his duty . . . to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, but it also enables us on appeal to determine whether the ultimate decision on the merits is rational and supported by substantial evidence." *Welch v. Bowen*, 854 F.2d 436, 440 (11th Cir. 1988) (internal quotation marks and citations omitted). Even still, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable [the reviewing court] to conclude that the ALJ considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (alteration adopted, quotation marks omitted).

Here, the ALJ properly considered all of LeCroy's mental health limitations, the subjective reports, and absenteeism. The ALJ applied the correct legal standards and substantial evidence supports the ALJ's decision that LeCroy is able to work even with her mental health treatment and disorders. At step four, the ALJ considered all of LeCroy's alleged impairments, including PTSD, social phobia, and panic disorder. When explaining the RFC finding, the ALJ described how LeCroy reported suffering from panic attacks and that she was bothered by leaving her home, spent most of her day in bed, stopped working due to overwhelming social anxiety and panic, and had symptoms that were exacerbated by grief and trauma. But, as the ALJ explained, substantial evidence—including Dr. Grace's consultative examination, Dr. Ronin's and

Dr. Kyle's opinions based on record review, and Beasley's and Dr. Kessen's treatment notes—supported an RFC not further limited by LeCroy's reported PTSD, social phobia, and panic disorder. The ALJ did not err in rejecting LeCroy's subjective reports about her own mental health, nor her friend, Antman's subjective reports. Those subjective statements were not consistent with the medical evidence in the record, as the ALJ explained in some detail. Indeed, as the ALJ said, the medical evidence supports a finding that LeCroy was cooperative, demonstrated a normal mood, appeared neat and clean, and was able to perform routine activities of daily life. And, while the ALJ acknowledged that LeCroy had been hospitalized for mental health concerns in the past, he noted that she had not been hospitalized in many years and thus would not need such lengthy treatment as to interfere with a work schedule.

In sum, we conclude that more than a scintilla of evidence supports the ALJ's decision that LeCroy was not under a disability that prevented her from performing any work. *Crawford*, 363 F.3d at 1158. Accordingly, we affirm.

**AFFIRMED.**