[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-11764

Non-Argument Calendar

_____

MARILYN MATOS,

                                                    Plaintiff-Appellant,

*versus*

COMMISSIONER          OF          SOCIAL          SECURITY,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 1:20-cv-20615-JEM

_____

Before WILSON, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

Marilyn Matos, through counsel, appeals the district court's order affirming the Social Security Administration's (SSA) denial of her applications for disability insurance benefits (DIB) and supplemental security insurance (SSI).  Matos argues first on appeal that substantial evidence did not support the Administrative Law Judge's (ALJ) disability determination.  Specifically, Matos contends that the ALJ failed to properly assess the medical opinion of Matos's treating physician.  Second, Matos argues that substantial evidence did not support the ALJ's residual functional capacity (RFC) finding that Matos could work in the national economy as a laundry worker, kitchen helper, or hospital cleaner.  Third, Matos argues that the ALJ's evaluation of her subjective complaints was not supported by substantial evidence where the ALJ determined that Matos's statements were inconsistent with her testimony and other medical evidence.  After careful review, we find that the ALJ's decision was supported by substantial evidence.  Therefore, we affirm.

## I.

The Social Security Regulations outline a five-step process for determining whether a claimant is disabled: (1) whether she is engaged in substantial gainful activity; (2) if not, whether she has a severe impairment or combination of impairments; (3) if so,

whether that impairment, or combination of impairments, meets or equals the medical listings; (4) if not, whether she can perform her past relevant work in light of her RFC; and (5) if not, whether, based on her age, education, and work experience, she can perform other work found in the national economy. *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011).

Here, Matos filed this application on April 19, 2017. After a hearing, the ALJ issued a decision on March 5, 2019, finding Matos was not disabled and denying her applications. Under the five-step analysis, the ALJ first found that Matos had not engaged in substantial gainful activity since August 5, 2016. Then, at step two, the ALJ found that Matos had the following severe impairments: major depressive disorder, co-dependent personality disorder, PTSD, schizoaffective disorder, and generalized anxiety disorder.

At step three, Matos did not have an impairment or combination of impairments that met or medically equaled the listings under section 12.00, specifically 12.03, 12.04, 12.06, 12.08, and 12.15. Under the listings' paragraph B criteria, the ALJ found that Matos had moderate limitations across four categories. Specifically, the ALJ found moderate limitations in Matos's ability to understand, remember, or apply information, based on the opinion of multiple psychiatric providers, and based on Matos's testimony that she prepared simple meals, went grocery shopping, and was able to follow written instructions and drive a car.

The ALJ also found that Matos was moderately limited in her ability to interact with others. Despite her testimony that she

had panic attacks when she was in places with many people, Matos went on a cruise for her father's birthday and enjoyed her time on the cruise.  The ALJ further noted that multiple psychiatric providers found Matos cooperative, with coherent and conversational speech, good eye contact, normal behavior, and no suicidal or homicidal ideation.

Likewise, the ALJ concluded that Matos had only moderate limitations in her ability to maintain concentration, persistence, and pace.  While Matos testified that she had trouble concentrating, she did not demonstrate any difficulties during the hearing and answered all questions appropriately.  She had also filled out a Function Report, in which she stated that she drove, read, wrote, watched television, and could count change.  The ALJ further considered the opinion of multiple psychiatric providers that Matos had a goal-oriented thought process, unremarkable thought content, fair abstract thinking, good calculation, and good attention.

Lastly, the ALJ found that Matos was only moderately limited in her ability to adapt and manage herself because, despite her testimony that she did not like to leave the house and did not care how she looked, she stated in the Function Report that on a typical day she prepared her son's meals, cleaned, watched television, and spent time with family members.  The ALJ also noted that Matos was able to leave home to attend her therapy sessions alone.  Multiple psychiatric providers had found that Matos had appropriate appearance, coordinated behavior, and an organized thought process, and that she consistently presented as casually dressed and

with good hygiene. The ALJ also found that there was no evidence that Matos was unable to adjust to changes in her environment.

At step four, in determining Matos's RFC, the ALJ found that Matos could perform a full range of work at all exertional levels, but with some nonexertional limitations. She could perform simple, routine, and repetitive tasks, but not at production rate paces, and she could occasionally interact with supervisors, co-workers, and the public. The ALJ found that Matos's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but her statements concerning their intensity, persistence, and limiting effects were not entirely consistent with the medical evidence.

In support of the RFC, the ALJ noted that at the start of her behavioral therapy appointments, Matos denied having active suicidal ideation, was alert, fully oriented, and cooperative, had good speech, good insight, and appropriate eye contact, and was dressed appropriately with good hygiene. The ALJ noted that progress notes during ongoing appointments described Matos as alert, organized, coherent, open, cooperative, with good eye contact and adequate judgment and insight, and without suicidal or homicidal ideation. The ALJ noted that Matos's treating physician, Dr. Dhizarah Matus de la Parra, had similar observations during Matos's medication management appointments.

Thus, the ALJ found that the objective medical evidence supported the RFC assessment, and that Matos retained the ability to perform the work-related functions as outlined. According to

the ALJ, Matos's continued engagement in daily activities "belie[d] the degree of severity alleged."

As to the medical opinions, the ALJ found persuasive the opinions of reviewing state psychologists Drs. Val Bee and Michael Plasay.  Dr. Bee opined that Matos had no more than moderate limitations.  And Dr. Plasay opined that Matos could understand, retain, and carry out simple and some complex instructions, was capable of attention and concentration on at least simple routine tasks for at least two hours at a time, and was able to perform activities within a schedule, and maintain regular attendance.  These opinions were persuasive, the ALJ found, in part because of the psychologists' knowledge of the Social Security Rules and Regulations.  The ALJ further found the psychologists' opinions to be generally consistent with the overall record and the hearing testimony.

In contrast, the ALJ did not find Dr. Matus de la Parra's opinion persuasive.  Dr. Matus de la Parra had opined that Matos's problems impacted her capacity to make occupational, performance, and personal adjustments—specifically, that she did not have the ability to deal with the public, co-workers, or supervisors, or the ability to deal with stress, function independently, or maintain attention or concentration.  That opinion, the ALJ found, was generally unsupported by the medical evidence of record.  The ALJ pointed, in particular, to Dr. Matus de la Parra's own note that Matos's immediate, recent, and remote memory were good.

As to step five of the sequential process, the ALJ found that Matos was capable of performing her past work as an office

messenger, which had a Specific Vocational Preparation (SVP) of 2, exertional level light.  The ALJ found that Matos could also perform work as a laundry worker, kitchen helper, or hospital cleaner, all of which had a skill level of medium, an SVP of 2, and an exertional level of medium.  Thus, the ALJ found that Matos could work and was not disabled.  The Appeals Council denied review.

## II.

On appeal, Matos raises three arguments.  First, she argues that the ALJ improperly assessed the medical opinion evidence.  Second, she argues that substantial evidence did not support the ALJ's RFC determination.  Third, Matos takes issue with the ALJ's evaluation of her subjective complaints.

## A.

We begin with the standard of review before addressing each of Matos's arguments on appeal.  When an ALJ denies benefits and the Appeals Council denies review, we review the ALJ's decision as the Commissioner's final decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  We review de novo the legal principles upon which an ALJ based its decision but review the resulting decision to determine whether it is supported by substantial evidence. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).  Under the substantial evidence standard, we look to an existing administrative record and asks whether it contains sufficient evidence to support the agency's factual determinations. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).  Substantial

evidence is "more than a mere scintilla" and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. *Id.* "We may not decide the facts anew, reweigh the evidence, or substitute our judgment" for that of the Commissioner. *Winschel*, 631 F.3d at 1178. We will defer to the Commissioner's judgment if it is supported by substantial evidence, even if the evidence preponderates against it. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (per curiam).

## B.

Having defined the standard of review, we turn to Matos's first argument: that the ALJ improperly assessed the opinion evidence of record—particularly that of Matos's treating physician, Dr. Matus de la Parra.

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A medical source's opinion that a claimant is "disabled" or "unable to work" is not dispositive of a disability claim because the disability determination is reserved to an ALJ acting on behalf of the Commissioner. *Walker v. Comm'r of Soc. Sec.*, 987 F.3d 1333, 1339 (11th Cir. 2021). The ALJ need not discuss every piece of evidence in its decision. *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).

For claims filed on or after March 27, 2017, the SSA's new regulations apply. *See* 20 C.F.R. § 404.1520c. This new regulatory scheme no longer requires the ALJ to either assign more weight to medical opinions from a claimant's treating source or explain why good cause exists to disregard the treating source's opinion. Under the new regulations, an ALJ should focus on the persuasiveness of medical opinions and prior administrative medical findings by looking at five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. *Id.* § 404.1520c(c)(1)–(5).

The ALJ may, but is not required to, explain how she considered factors other than supportability and consistency, which are the most important factors. *Id.* § 404.1520c(b)2. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). And "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and non-medical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2).

Matos argues that the ALJ improperly discounted the opinion of Dr. Matus de la Parra, based on an incorrect determination that it was not consistent with the overall record. According to

Matos, the ALJ should have credited Dr. Matus de la Parra's determination that she could not deal with the public, co-workers, or supervisors, and that she lacked the ability to deal with stress, function independently, or maintain attention or concentration. Matos asserts that the ALJ erred by citing only Dr. Matus de la Parra's benign findings and ignoring the rest of her findings. We disagree. Substantial evidence supports the ALJ's determination that Matos was not disabled, based on a consideration of the consistency and supportability of the medical opinion evidence and prior administrative medical findings in accordance with the SSA's new regulatory scheme.

Dr. Matus de la Parra's own treatment notes reflected that Matos was alert, oriented, casually dressed, well groomed, had normal speech, was goal oriented in her thought process, and had no hallucinations or suicidal ideation. Her immediate, recent, and remote memory were good. The medical record evidence from other providers also showed that Matos was cooperative and agreeable, with goal-oriented thought process, good concentration, memory, judgment, and insight, and was well-dressed with good grooming and good hygiene. Matos continued to engage in activities of daily living, including independent dressing and grooming, cooking, cleaning, shopping, driving, going on family vacation, and taking care of her family. Thus, substantial evidence supports the ALJ's finding that Dr. Matus de la Parra's opinion was inconsistent with the overall record and unpersuasive.

Matos also argues that the ALJ erred by relying heavily on the opinions of state agency psychologists. Those opinions, Matos argues, were "internally inconsistent" and "vague." The state agency psychologists concluded that Matos was limited to "simple work activities" but then determined that she was capable of carrying out "some complex instructions." As a result, Matos argues, the ALJ should not have found their opinions persuasive.

But substantial evidence supported the ALJ's determination that the opinions of Dr. Bee and Dr. Plasay merited considerable weight. Those opinions were persuasive, the ALJ found, because of the state psychologists' program knowledge with respect to the Social Security Rules and Regulations, and because their opinions were generally consistent with the overall record. The ALJ noted, specifically, that Dr. Bee's and Dr. Plasay's opinions were consistent with the testimony at the hearing, as well as the medical record evidence that included generally benign findings, Matos's demonstrated improvement with treatment, and her admitted medication noncompliance. The medical record evidence supports, and is consistent with, Dr. Bee's and Dr. Plasay's opinions that Matos has no more than moderate limitations, can understand, retain, and carry out simple and some complex instructions, is capable of attention and concentration on at least simple and routine tasks, is able to perform activities within a schedule, maintain regular attendance, and to be punctual within customary tolerances. Accordingly, we conclude that the ALJ did not err in her evaluation of the medical opinions.

## C.

We next address whether substantial evidence supports the ALJ's finding of RFC at step four and her finding that Matos could perform other work in the national economy at step five.

At step four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). The RFC is an assessment of a claimant's ability to do work despite her impairments. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. § 404.1545(a). In formulating an RFC at the fourth sequential step, the ALJ considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work." 20 C.F.R. § 404.1545(a)(4). The ALJ examines all relevant medical and other evidence, including "any statements about what [the claimant] can still do that have been provided by medical sources" and "descriptions and observations" by the claimant, her family, her neighbors, her friends, or others, of her limitations, including limitations resulting from pain. *Id.* § 404.1545(a)(3).

At step five, the ALJ considers the RFC and the claimant's age, education, and work experience to see if the claimant can make an adjustment to other work. *See id.* § 404.1520(a)(4)(v). During this step, the burden temporarily shifts to the SSA to show the existence of other jobs in the national economy that the claimant can perform, given her impairments. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1321 (11th Cir. 2021). "The ALJ

thus must determine, in light of the Dictionary of Occupational Titles (DOT) and the vocational expert's (VE) testimony, whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of [her] impairments." *Id.* (internal quotation mark omitted).

Where a VE provides evidence about a job's requirements, the ALJ has an affirmative duty to inquire about any "apparent conflicts" between that evidence and information provided in the DOT. *Id.* A conflict is apparent if it is "apparent to an ALJ who has ready access to and a close familiarity with the DOT." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1366 (11th Cir. 2018). If the "conflict is reasonably ascertainable or evident," the ALJ must identify it. *Id.* "Where the VE's evidence is inconsistent with the information in the DOT, the ALJ must resolve the conflict before relying on the VE's evidence to support a determination that a claimant is or is not disabled." *Buckwalter*, 5 F.4th at 1321.

Here, after posing a hypothetical question to the VE to consider an individual with the same age, education, and work experience as Matos, the ALJ found that Matos could perform three jobs in the national economy: laundry worker, kitchen helper, and hospital cleaner. Each of these jobs requires a reasoning level of two, which requires the individual to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and deal with problems involving a few concrete variables in or from standardized situations. DOT 318.687-010, 1991 WL 672755 (Jan. 1, 2016) (Kitchen Helper); DOT 323.687-010, 1991 WL 672782

(Jan. 1, 2016) (Hospital Cleaner); DOT 361.684-014, 1991 WL 672983 (Jan. 1, 2016) (Laundry Worker). The need for a worker in these jobs to function in relation to people is "not significant." *Id.*

Matos makes two arguments as to why substantial evidence did not support the ALJ's RFC finding. We take each in turn.

**1.**

First, Matos argues that the ALJ's RFC finding is problematic because it does not contain all of the limitations discussed by the state agency's psychologists, nor does it explain the reason for such omissions. Specifically, Matos argues that while both state agency psychologists noted that she "may need support with planning and goal setting," the ALJ's RFC did not account for this limitation or explain its exclusion. Matos emphasizes that the state agency's opinions were consistent with Dr. Matus de la Parra's opinion that she would "need frequent prompts and assistance to sustain work concentration" and that she "may have difficulty maintaining an adequate level of job performance in pressure situations where there are rapid changes in routine and job responsibilities."

Matos also takes issue with the ALJ's finding that she has the capacity to "occasionally interact" with others. This finding, Matos argues, is in conflict with the opinion of the state psychologists that Matos could have only "limited and superficial social interaction." Matos also argues that the finding conflicts with the fact that she has been diagnosed as bipolar.

A review of the medical evidence, however, shows that the ALJ's RFC determination was supported by substantial evidence. The ALJ found that Matos had the RFC to perform a full range of work at all exertional levels; she had nonexertional limitations to "simple, routine, repetitive tasks, but not at a production rate pace such as piece work or assembly line work" and to "occasionally interact with supervisors, coworkers, and the public." In reaching this determination, the ALJ stated that she had carefully considered the entire record including the medical opinions and prior administrative medical findings.

Notwithstanding Matos's symptoms, the state psychologists opined that she was no more than moderately limited as to her concentration, persistence, ability to interact socially, and ability to adapt. And the ALJ's decision incorporated limitations to Matos's social interaction, limiting her to "occasional" interaction with others. Although the ALJ did not specifically discuss Matos's bipolar diagnosis, the ALJ was not required to discuss every piece of evidence in evaluating Matos's claim. In any event, the ALJ's decision noted that the ALJ carefully considered all of the impairments, including those listed in medical listing 12.04, which includes depressive, bipolar, and related disorders.

## 2.

Next, Matos claims that there is an "apparent conflict" between the VE's testimony and the DOT because jobs with a reasoning level of two require an individual to be able to "carry out detailed but uninvolved written or oral instructions." That

argument also fails.  For a conflict to be apparent, it must be reasonably ascertainable or evident from a review of the VE's testimony and DOT.  *Washington*, 906 F.3d at 1366.  There is no apparent conflict between a limitation to simple, routine, repetitive tasks and a requirement to carry out detailed but uninvolved instructions.  Routine, repetitive tasks could reasonably involve a few concrete variables from standardized situations.  *See* DOT 318.687-010; DOT 323.687-010; DOT 361.684-014; *see also Buckwalter*, 5 F.4th at 1324 (holding that a limitation to following simple instructions does not create an apparent conflict with jobs requiring a reasoning level of two).

Matos argues that while the ALJ limited her to simple *tasks*, she erred by failing to include a limitation as to Matos's capacity to follow simple *instructions* in her RFC.  We disagree.  Matos stated in writing that she follows written instructions "well."  And the state agency psychologists found that Matos was only moderately limited in her ability to carry out detailed instructions.  Thus, the ALJ's decision not to include a limitation to only simple instructions in Matos's RFC was supported by substantial evidence.  Therefore, we affirm on this issue.

## D.

Finally, we address whether the ALJ properly assessed Matos's alleged symptoms and limitations.  Matos argues that the symptoms she self-reported to the agency and to the physicians, psychiatrists, and psychologists, as well as the third-party reports and her hearing testimony, have been consistent throughout the

record.  Accordingly, she says that the ALJ did not provide the requisite good cause for discounting them.

The ALJ must evaluate the intensity and persistence of the claimant's symptoms and will consider all available evidence in making that determination.  20 C.F.R. § 404.1529(c)(1).  A rejection of subjective statements may not be based solely on objective medical evidence.  *Id.* § 404.1529(c)(2).  If the ALJ rejects subjective testimony, she must articulate explicit and adequate reasons for doing so.  *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (per curiam).  We will not disturb a clearly articulated finding about subjective complaints supported by substantial evidence.  *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

Here, substantial evidence supports the ALJ's finding that Matos's statements concerning the intensity, persistence, and limiting effects of her symptoms were not consistent with the objective medical evidence.  The ALJ provided numerous reasons for finding that Matos's statements and testimony at the hearing did not support her claims as to the intensity of her symptoms.  Specifically, the ALJ reasonably relied on Matos's statements that she engaged in a variety of daily living activities such as independent dressing and grooming, cooking, cleaning, shopping, driving, going on family vacations, and taking care of her family.  While Matos testified that she did not care how she looked, multiple psychiatric providers noted that she was casually or well dressed and presented with good hygiene.  And while Matos testified that she could not go places where there were a lot of people, she also testified to the

contrary that she enjoyed the cruise she went on for her father's birthday. Accordingly, substantial evidence supports the ALJ's evaluation of Matos's subjective complaints.

### III.

In conclusion, substantial evidence supports the ALJ's assessment of the medical opinion evidence, the ALJ's RFC finding, and the ALJ's evaluation of Matos's subjective complaints. Finding no error in the ALJ's decision, we affirm in all respects.

**AFFIRMED.**