[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13674

Non-Argument Calendar

_____

APRIL LA REE EPPS,

Plaintiff-Appellant,

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:20-cv-01340-CLM

_____

Before NEWSOM, ABUDU, and HULL, Circuit Judges.

PER CURIAM:

April La Ree Epps appeals the district court's order affirming the denial of her application for a period of disability, disability insurance benefits, and supplemental security income benefits. On appeal, Epps raises several issues relating to the Administrative Law Judge's ("ALJ") evaluation of her treating physician's opinion of Epps's physical capacities. After careful review, we find no error in the ALJ's handling of this evidence and affirm.

## I.  BACKGROUND

### A.    2017 Application

On July 26, 2017, Epps applied for benefits, alleging she became disabled on August 1, 2016. At the time of her hearing, Epps was a 38-year-old mother of five children, ages 16, 12, 7, 4, and 2, and lived with her boyfriend.

For a few years leading up to her application, Epps was self-employed, buying items and reselling them online and at auctions. Epps's application indicated she stopped working on August 1, 2016 due to her ailments, including anxiety, panic disorder, obsessive-compulsive disorder, non-essential tremors, migraines, degenerative disc disease in her neck, crooked spine, and limited use of her arms.

## B.     Medical Conditions

Epps was in a serious car accident when she was 14 years old and has a long history of hip, back, and neck pain. In approximately 2014, Epps was in another car accident that worsened those conditions. In 2016, Epps began suffering from what she considered her most severe problem, constant headaches accompanied by ringing in the ears and dizziness. Epps's headaches sometimes lasted for days or weeks or became so painful that she went to the emergency room for treatment. Epps also suffers from anxiety, panic attacks, and depression.

In July 2017, after she stopped working in 2016, Epps was diagnosed with a Baker's cyst behind her right knee.[1] August 2018, Epps had Baker's cysts behind both knees. And, in the six months leading up to her ALJ hearing, Epps began experiencing edema that caused weight gain and joint pain.

Between 2016 and 2019, Epps's doctors prescribed medications for pain, migraines, inflammation, anxiety, and depression. She was also prescribed Lasix and support stockings for her edema and physical therapy for knee pain.

Yet, over the same period, her doctors ordered diagnostic imaging, including CTs, MRIs, and x-rays, of Epps's head, lumbar

---

[1] Baker's cysts are fluid-filled growths behind the knee causing a bulge and tightness. *Baker cyst*, Mayo Clinic, https://www.mayoclinic.org/diseases-conditions/bakers-cysts/symptoms-causes/syc-20369950 (last visited Nov. 21, 2023).

spine, cervical spine, and knees, that showed no abnormal results apart from the small cysts in her knees and mild degenerative changes in the sacroiliac joints of her lumbar spine.

## C.    ALJ Hearing in 2019

At an April 4, 2019 hearing before the ALJ, Epps and a vocational expert ("VE") testified.

Epps described her headaches as constant, rating them a 10 (on a pain scale of 0 to 10) for 15 days in a 30-day period, with only one or two good days in a month. She had back and hip pain 20 days in a month, with her back pain staying at a 3 or 4 and her right hip pain rising to an 8 or 9 for 10 of those 20 days. Because of her neck pain, lifting more than 5 pounds caused neck problems, and tightness in her neck made it difficult to move. The Baker's cysts behind her knees made bending over to pick things up from the floor difficult. She had panic attacks several times in a week and extreme fatigue and weakness caused by her medications. Her anxiety made it difficult to interact with people or leave her home.

Epps said that because of her symptoms, she could walk only 20 or 30 steps, stand for no more than 15 minutes at a time, and sit for no more than 30 minutes at a time. Epps also had to lie down for 20 minutes before she could return to a seated or standing position. As a result, she had to lie down for 4 or 5 hours each work day. Epps said she did not take care of her personal needs, changed her clothes only once a week, and left most of the household chores and shopping for her boyfriend and her older children. When alone with her two youngest children, Epps said she stayed on a

couch in the living room, where her children watched cartoons and played with toys.  Epps denied lifting her two-year-old child.

During the VE's testimony, the ALJ asked the VE to presume the following non-exertional limitations:

> [N]o operation of foot controls.  No more than occasional climbing stairs, never climbing ladders, ropes, or scaffolds.  No kneeling, crouching, or crawling.  Avoid all exposure to extreme heat and excessive vibration.  Avoid concentrated exposure to pulmonary irritants such as fumes, odors, dusts, gases, poorly-ventilated areas, and to chemicals. Avoid unprotected heights and hazardous machinery. Limited to unskilled with the ability to attend and concentrate for two-hour periods.  No more than occasional workplace changes, and the ability to make simple work-related decisions.  No more than occasional direct interaction with the general public, and work that can be around coworkers throughout the day, but with only occasional interaction with coworkers.

In one hypothetical, the ALJ asked if unskilled jobs with these limitations existed for an individual who had the capacity to perform a range of medium work activity.  The VE responded that the hypothetical individual would be able to perform work as a packer and packager, assembler, or order puller.

## D.    ALJ Decision

On May 31, 2019, in a 12-page decision, the ALJ found that Epps was not under a disability from August 1, 2016, through the date of decision.

Specifically, applying the five-step evaluation process, the ALJ found that: (1) Epps met insured status requirements and had not engaged in substantial gainful activity since her onset date of August 1, 2016; (2) Epps had the severe impairments of "moderate Baker's cysts right knee with mild degenerative changes, anxiety and depression; (3) Epps did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments; (4) Epps had the residual functional capacity ("RFC") to perform medium work with the certain restrictions, namely the limitations the ALJ identified to the VE during the hearing; and (5) considering Epps's age, education, work experience, and RFC, jobs existed in the national economy that she could perform.

In assessing Epps's RFC at step four, the ALJ found Epps's statements about her physical and mental limitations were "not persuasive" in light of objective medical evidence that indicated she retained "greater functioning than alleged." The ALJ determined that Epps's "statements concerning the intensity, persistence and limited effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record."

The ALJ reviewed Epps's medical records between April 2016 and January 2019, including treatment notes from Dr. Larry

Scarborough, her primary care physician at Quality of Life Health Services. The ALJ also noted that Dr. Scarborough had completed a physical capacities evaluation as to Epps.

On that evaluation form, Dr. Scarborough opined that: (1) Epps could sit upright in a standard chair for less than 30 minutes and stand for less than 15 minutes; (2) during an eight-hour period, Epps would need to lie down, sleep, or sit with legs propped up for five hours; and (3) Epps would be off task for 79%[2] of a normal workday. Dr. Scarborough identified the conditions causing Epps's limitations as "[h]eadache, cervicalgia, myalgia, [and] edema."[3] Dr. Scarborough listed "drowsiness" as a side effect of Epps's medications.

The ALJ, however, determined that Dr. Scarborough's assessment of Epps's physical capacities was "not supported and not persuasive." The ALJ first found that Epps did not seek treatment for the drowsiness that Dr. Scarborough indicated was a side effect of her medications, that Epps's medical "[e]xamination[s] have not shown edema," and that "[t]reatment examinations have shown normal attention span and

---

[2] The ALJ determined that this handwritten figure is 79%. Epps submits that it is 75% but acknowledges that the discrepancy is "trivial."

[3] Cervicalgia is neck pain. *Neck Pain*, Medical Dictionary Online, https//www.online-medical-dictionary.org/definitions-n/neck-pain/html (last visited Nov. 21, 2023). Myalgia is muscle pain. *Myalgia*, Medical Dictionary Online, https//www.online-medical-dictionary.org/definitions-m/myalgia.html (last visited Nov. 21, 2023).

concentration and [Epps] being in no acute distress." The ALJ cited treatment notes from Epps's May 23, 2018, visit to Cherokee Health Clinic as an example.

Regarding mental impairments, the ALJ further found that Epps had "minimal treatment for depression and/or anxiety" and had not demonstrated any psychiatric abnormality since 2017. The ALJ highlighted that, upon examination, Epps "was cooperative and pleasant" and otherwise "ha[d] not exhibited any evidence of cognitive deficits or psychosis that would preclude substantial gainful activity."

Regarding physical ailments, the ALJ observed that, although Epps received treatment in emergency departments after complaining of headaches, "she was treated and generally discharged on the same day." The ALJ found that Epps's Baker's cysts improved with injections, imaging studies of her knees "only showed mild degenerative changes," and her gait and station were consistently normal.

Further, the ALJ pointed out that imaging studies of her neck, back, and brain were generally normal. The ALJ summarized its finding that Epps's "allegations are not fully consistent with the objective findings and she retain[ed] the capacity to perform substantial gainful activity."

### E.    Appeals Council Review

The Appeals Council granted Epps's request for review. Ultimately, on August 15, 2020, the Appeals Council adopted the

ALJ's findings and conclusions as to Epps's lack of disability, including the ALJ's RFC-related findings at step four.

As further background, Epps submitted new medical evidence to the Appeals Council, but Epps does not appeal the Appeals Council's decision as to this new medical evidence. For completeness though, here is what happened. The Appeals Council initially adopted the ALJ's findings and conclusion. After receiving Epps's new medical evidence, however, the Appeals Council set aside its initial decision. The Appeals Council determined that some of the new medical evidence did not show a reasonable probability that it would change the outcome of the decision and that the rest of the new medical evidence did not relate to the time period at issue and therefore did not affect the decision. The Appeals Council again adopted the ALJ's findings and conclusions that Epps was not disabled, including the RFC-related findings at step four.

## F.    District Court Proceedings

On judicial review, Epps argued that the ALJ erred by rejecting Dr. Scarborough's opinion "without sufficient legal explanation" and by failing to afford Dr. Scarborough's opinion proper weight as Epps's treating physician.

Affirming the ALJ decision, the district court relied on this Court's decision in *Harner v. Social Security Administration, Commissioner*, 38 F.4th 892 (11th Cir. 2022). In *Harner*, this Court concluded that the Social Security Administration's new regulation, 20 C.F.R. § 404.1520c, validly abrogated the prior

treating physician rule. 38 F.4th at 894. The prior rule accorded significant weight to a treating physician's opinion. *Id.* at 896-97. The new regulation requires ALJs to evaluate all medical opinions for persuasiveness using the same criteria. *See* 20 C.F.R. § 404.1520c. The district court concluded that the ALJ applied the correct legal standard in evaluating Dr. Scarborough's opinion and adequately explained why she found Dr. Scarborough's opinion not persuasive and that substantial evidence supported the ALJ's finding as to Dr. Scarborough's opinion.

## II.  STANDARD OF REVIEW

"We review de novo the ALJ's application of legal principles, and we review the ALJ's resulting decision to determine whether it is supported by substantial evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021) (quotation marks omitted).

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). To the extent the ALJ commits an error, we will not reverse if the error did not affect the ALJ's ultimate determination. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying harmless error review in the social security context).

### III.  DISCUSSION

#### A.    New Regulation in 20 C.F.R. § 404.1520c

Prior to 2017, the Courts of Appeals, including this Court, applied a treating physician rule, which required ALJs to give the opinion of a treating physician "substantial or considerable weight unless 'good cause' [was] shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (quotation marks omitted), *superseded by* 20 C.F.R. § 404.1520c; *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003).  In 1991 the Social Security Administration promulgated a regulation that adopted the court-made rule and required ALJs generally to give more weight to treating physicians' opinions absent a showing of good cause. *See* 20 C.F.R. § 404.1527(d)(2) (1992); 20 C.F.R. § 404.1527(c)(2) (2016) (most recent version of the treating physician rule).

In 2017, however, the Commissioner issued a new regulation, 20 C.F.R. § 404.1520c, that abrogated the treating physician rule. *Harner*, 38 F.4th at 894.  The new regulation provides that an ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)," including a treating physician's opinion. *Id.* § 404.1520c(a).  Instead, the ALJ weighs all medical opinions based on their persuasiveness.  20 C.F.R. § 404.1520c.

Section 404.1520c applies to all claims filed on or after March 27, 2017. *Id.*  Epps applied for benefits on July 26, 2017.  Epps does

not dispute that because she filed her application after March 27, 2017, her claim is governed by the new regulation if it is valid.

## B.    Validity of 20 C.F.R. § 404.1520c

Epps argues the § 404.1520c regulation is invalid.[4] Specifically, Epps contends the new regulation is in derogation of the text and structure of the relevant statute, 42 U.S.C. § 423(d)(5)(B). The § 423(d)(5)(B) statute provides that ALJs must "make every reasonable effort to obtain from the individual's treating physician . . . all medical evidence . . . necessary" to make a proper disability determination. 42 U.S.C. § 423(d)(5)(B).[5] Epps contends: (1) the § 423(b)(5)(B) statute requires the ALJ to give deference or special consideration to the opinion of treating

---

[4] As a threshold matter, we reject the Commissioner's claim that in the district court Epps did not adequately raise an issue challenging the validity of 20 C.F.R. § 404.1520c.

[5] Section 423(d)(5)(B) states in full:

> (B)  In making any determination with respect to whether an individual is under a disability or continues to be under a disability, the Commissioner of Social Security shall consider all evidence available in such individual's case record, and shall develop a complete medical history of at least the preceding twelve months for any case in which a determination is made that the individual is not under a disability.  In making any determination the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician (or other treating health care provider) all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from any other source on a consultative basis.

physicians; and (2) thus, the § 404.1520c regulation, wherein the ALJ weighs all medical opinions based on persuasiveness, is invalid. We first address our decision in *Harner* and then Epps's arguments about the new regulation.

In *Harner*, the claimant argued that "our earlier precedents establishing and applying the treating-physician rule [were] still good law, notwithstanding the promulgation of [the] section 404.1520c" regulation. 38 F.4th at 896. This Court disagreed, holding that "the new regulation validly abrogated" our court-developed treating physician rule and applied to Harner's claim. *Id.* at 894.

In doing so, the *Harner* Court concluded that the § 404.1520c regulation fell within the scope of the Commissioner's rulemaking authority as delegated by the Congress under the Social Security Act. *Id.* at 897 (citing 42 U.S.C. § 405(a)). Our Court explained that 42 U.S.C. § 423(d)(5)(B) "instructs administrative law judges to make every reasonable effort to obtain from the individual's treating physician all medical evidence necessary to make a proper disability determination." *Id.* at 897 (cleaned up). But "the [Social Security] Act does not specify how this evidence is to be weighed." *Id.* Citing *Chevron*, the *Harner* Court reasoned that because the § 404.1520c regulation fell within Congress's delegation of authority and was "not manifestly contrary to" the § 423(d)(5)(B) statute, the regulation did not exceed the Commissioner's statutory authority. *Id.* (citing *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 844 (1984)).

The *Harner* Court also determined that the § 404.1520c regulation was not arbitrary and capricious, and, importantly for Epps's argument here, that the treating physician rule was not "unambiguously required by the [Social Security] Act." *Id*. at 897-98. Thus, our Court determined that the § 404.1520c regulation "abrogate[d] our earlier precedents applying the treating-physician rule." *Id.* at 896. Because the new regulation applied to Harner's claim, the Court concluded that the ALJ properly declined to give more weight to the medical opinions of Harner's treating physicians. *Id.* at 898.

Here, Epps argues that the § 404.1520c regulation is invalid because the § 423(d)(5)(B) statute unambiguously requires a treating physician rule that gives deference or special consideration to the opinion of a treating physician. The problem for Epps is that the question of whether the treating physician rule exists in the text of the Social Security Act was explicitly answered in *Harner*, which concluded that the treating physician rule was *not* required by the Act. *See id*. And we are bound by *Harner*. *See United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008). To the extent Epps claims her argument is slightly different from the claimant's argument in *Harner*, this Court has categorically rejected an overlooked reason or argument exception to our prior panel precedent rule. *See Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1234 (11th Cir. 2006) ("[A] prior panel precedent cannot be circumvented or ignored on the basis of arguments not made to or considered by the prior panel.").

Given that Epps's application was filed after March 27, 2017, the ALJ was precluded by the § 404.1520c regulation from deferring to or giving specific weight to any medical opinion, including to Dr. Scarborough's opinion. The ALJ's decision contains a statement to that effect. Accordingly, the ALJ applied the correct legal standard for evaluating medical opinions and did not err in declining to give Dr. Scarborough's opinion special consideration or weight.

## C.    ALJ's Compliance with the § 404.1520c Regulation

Under § 404.1520c, the ALJ must consider any submitted medical opinion and "articulate how persuasive" the ALJ finds the medical opinion. 20 C.F.R. § 404.1520c(a), (b). The ALJ determines the persuasiveness of a medical opinion using five enumerated factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(a), (c).

Because the "most important" factors are supportability and consistency, the ALJ must explain how it considered those factors, but may or may not explain the other factors. *Id.* § 404.1520c(b)(2). As to supportability, the more relevant the objective medical evidence and supporting explanations from the medical source, the more persuasive the medical opinion will be. *Id.* § 404.1520c(c)(1). As to consistency, the more consistent a medical opinion is with the evidence from other sources, the more persuasive the medical opinion will be. *Id.* § 404.1520c(c)(2).

Here, the ALJ complied with the § 404.1520c regulation. The ALJ explicitly considered Dr. Scarborough's opinion about Epps's physical capacities. The ALJ stressed that Dr. Scarborough's assessment of Epps's physical capacities—"sitting fewer than 30 minutes, standing fewer than 15 minutes, laying down or sitting with legs propped at waist level [for] 5 hours, being off tasks 79% of the time, and missing 15 days per month due to headache, cervicalgia, myalgia, edema and adverse medication due to drowsiness"—meant that Epps was "essentially disabled." The ALJ then stated that she found Dr. Scarborough's opinion "not persuasive." *See id.* § 404.1520c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions . . . .").

As to the § 404.1520c(c) factors, the ALJ explained that she found Dr. Scarborough's opinion was "not supported." The ALJ began by noting that Epps had not sought treatment for drowsiness from medication, that examination had not shown edema but had shown "normal attention span and concentration," and that Epps was "in no acute distress." Then, over several paragraphs, the ALJ outlined evidence of Epps's medical treatment (and cited exhibits that included Dr. Scarborough's treatment notes) that indicated Epps's symptoms were not as severe as Dr. Scarborough's opinion suggested.

For example, one of the conditions Dr. Scarborough cited as a cause of Epps's limitations was headaches. The ALJ pointed out that (1) Epps was treated and discharged the same day when she

went to the emergency room for headaches, (2) her headaches did not "frequently involve changes in vision, flashes of light, difficulty speaking, nausea, vomiting, or lightheadedness," and (3) imaging of Epps's brain had "revealed no acute abnormalities."

As to Epps's cervicalgia (neck pain) and myalgia (muscle pain)—two other conditions Dr. Scarborough cited—the ALJ noted that (1) Epps's Baker's cysts improved with Kenalog injections, (2) imaging of Epps's knees showed only "mild degenerative changes," (3) imaging of Epps's neck and back was "generally normal," and (4) Epps had "consistently demonstrated a normal gait and station." And, as a general matter, the ALJ observed that Epps "responded well to treatment when she was compliant."

The ALJ explained that this evidence "supported" her RFC finding (rather than Dr. Scarborough's opinion) and that Epps's claims about her capacities (through Dr. Scarborough's opinion) were "not fully consistent" with the objective findings. Contrary to Epps's claim, this explanation was sufficient to comply with the § 404.1520c regulation. *See* 20 C.F.R. § 404.1520c(b)(2) ("[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions.").

Epps correctly points out that one of the ALJ's statements—that examinations of Epps showed no edema—is not supported by substantial evidence. While many physical examinations did not reveal edema, Epps testified that her swelling did not begin until mid-2018, just six months before her administrative hearing. By

that time, some physical examinations noted swelling or edema, particularly in her feet and ankles. But this one discrepancy does not undermine the ALJ's overall evaluation of Dr. Scarborough's opinion or the ALJ's ultimate determination. *See Diorio*, 721 F.2d at 728. Epps indicated that swelling was only her third-most-severe ailment, behind her headaches and neck pain. Additionally, physical examinations between May and November 2018 showed that Epps had a normal gait and strength in her extremities despite her edema.

Furthermore, the ALJ's other observations are supported by substantial evidence. As the ALJ noted, Epps did not seek treatment for drowsiness (and did not frequently complain of drowsiness as a side effect of her medication), and clinical findings in her doctors' treatment notes indicated that despite Epps's complaints of pain, her strength, gait, range of motion, and sensory and motor skills were not significantly impaired, and that her mental status was not significantly altered.[6] Additionally, as the ALJ observed, diagnostic imaging and other tests showed no abnormalities beyond the small cysts behind her knees and mild degenerative changes in both sacroiliac joints of her lumbar spine.

---

[6] Epps also correctly notes that Dr. Scarborough's opinion listed drowsiness as a side effect rather than as a chronic condition that limited Epps's physical capacities. But the fact that Dr. Scarborough listed drowsiness as a side effect, despite Dr. Scarborough's treatment notes failing to mention this side effect, undermines the supportability and overall persuasiveness of his opinion.

Epps also takes issue with the ALJ's focus on the absence of acute distress during Epps's physical examinations, pointing out that her conditions were chronic, not acute, and that she has good days and bad days. To be sure, chronic ailments are distinct from acute ailments. But Epps's *consistent* lack of acute distress over many physical examinations by both primary care and emergency room staff supports the ALJ's determination that the pain from her conditions was not so severe as to justify Dr. Scarborough's significant limitations.[7]

In sum, substantial evidence supports the ALJ's determinations that Epps's physical capacities were not as severely limited as Dr. Scarborough opined and that Dr. Scarborough's opinion was unpersuasive.

## IV. CONCLUSION

For these reasons, we affirm the district court's judgment affirming the Commissioner's denial of Epps's application for disability insurance and supplemental security income benefits.

**AFFIRMED.**

---

[7] Because Epps filed her application in July 2017, her claim is governed by the new § 404.1520c regulation. For this reason, Epps's reliance on this Court's decisions, such as *Schink v. Commissioner of Social Security*, 935 F.3d 1245, 1262 (11th Cir. 2019), applying the prior version of the regulations and requiring the ALJ to identify "genuine inconsistencies" to discount a treating physician's opinion misses the mark. Here, unlike in those cases, the ALJ was not required to provide substantial weight to a treating physician's opinion absent a showing of good cause. *Cf. Schink*, 935 F.3d at 1259 & n.4, 1262-63.