[DO NOT PUBLISH]

In the

# United States Court of Appeals

### For the Eleventh Circuit

_____

No. 24-10668

Non-Argument Calendar

_____

JARY WATSON,

Plaintiff-Appellant,

*versus*

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cv-14376-RMM

_____

Before JORDAN, LUCK, and ANDERSON, Circuit Judges.

PER CURIAM:

Jary Todd Watson appeals the district court's order affirming the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for disability insurance benefits ("DIB"). Watson argues that the Administrative Law Judge's ("ALJ") residual functional capacity ("RFC") finding was materially deficient because it failed to address any corresponding limitations that would account for the ALJ's finding that Watson had "mild" limitations in the four broad areas of mental functioning known as the "paragraph B" criteria. Watson also argues that the ALJ failed to properly consider or articulate how she considered the "supportability" and "consistency" of Dr. Gary Laux's opinion as required by 20 C.F.R. § 404.1520c(b)(2) and failed to provide any rationale for her rejection of Nurse John Profera's mental status report.

## I. Watson's Challenge to the ALJ's RFC

We review the ALJ's decision as the Commissioner's final decision when the ALJ denies benefits and the Appeals Council denies review of the ALJ's decision. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). We review Social Security cases to determine whether the Commissioner's decision was supported by substantial evidence and whether the correct legal standards were applied. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The Commissioner's factual findings must be supported by

substantial evidence, meaning "more than a scintilla" and "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation marks omitted). However, we review *de novo* the legal principles applied by the Commissioner. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1268 (11th Cir. 2024).

An individual claiming Social Security disability benefits must prove that he is disabled. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). The Social Security regulations outline a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v), (b)-(g). First, if a claimant is engaged in substantial gainful activity, they are not disabled. *Id.* § 404.1520(a)(4)(i), (b). Second, if the claimant has no impairment or combination of impairments that significantly limits their ability to work, they are not disabled. *Id.* § 404.1520(a)(4)(ii), (c). Third, if the claimant's impairment meets or equals the severity of one of the Social Security regulations' listed impairments, they are considered categorically disabled. *Id.* § 404.1520(a)(4)(iii), (d). Fourth, based on an RFC assessment, if a claimant can still do their past work, they are not disabled. *Id.* § 404.1520(a)(4)(iv), (e)-(f). Fifth, in light of their RFC, age, education level, and work experience, if a claimant cannot do their past work but can make an adjustment to other work, they are not disabled. *Id.* § 404.1520(a)(4)(v), (g).

The claimant's RFC is "the most [they] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1). An RFC includes

"all of [the claimant's] medically determinable impairments" and is assessed "based on all the relevant medical and other evidence." *Id.* § 404.1545(a)(2)-(3). Social Security Ruling 96-8p describes an RFC as an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. SSR 96-8p. The assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments, including the impact of any related symptoms. *Id.*

Paragraph (c) of 20 C.F.R. § 404.1545 addresses how the ALJ considers mental abilities when assessing the RFC, and provides that:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. § 404.1545(c).

"In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities" using the four areas known as the "paragraph B" criteria. *Buckwalter v. Acting*

*Comm'r of Soc. Sec.,* 5 F.4th 1315, 1324 (11th Cir. 2021). "The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage h[im]self." *Id.* at 1324-25 (citing 20 C.F.R. § 404.1520a(c)(3)). However, "[t]he ALJ's analysis as to the Paragraph B criteria . . . is distinct from the more detailed inquiry as to a claimant's RFC at step four." *Id.* at 1325.

In *Schink v. Comm'r of Soc. Sec.*, we discussed what an ALJ must consider when assessing a claimant's RFC. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268-70 (11th Cir. 2019). We concluded that, although the ALJ stated that he "considered all symptoms" when assessing Schink's RFC, "the content of his decision demonstrate[d] that he did not," because "[n]early the entire section of the ALJ's opinion relating to RFC discusse[d] Schink's physical impairments," but failed to discuss Schink's bipolar disorder or how that disorder affected his RFC. *Id.* at 1269. We also noted that "the ALJ's ultimate conclusions as to [the] RFC d[id] not include even a single finding about Schink's mental capacities." *Id.* Moreover, we noted that "most of the references to Schink's bipolar disorder in the RFC section [were] purely biographical or occur[red] within summaries of medical examinations relating to Schink's physical conditions." *Id.* We further explained that, even if the ALJ implicitly considered the mental conditions in determining the claimant's RFC, "the ALJ's failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal in its own right." *Id.* (quotation marks omitted).

In addition, we observed that, although the ALJ had found Schink's bipolar disorder to be a non-severe impairment under the four paragraph B criteria at steps two and three, the mental RFC assessment used at steps four and five of the process "require[d] a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B," and that, even if we "assume[d] the RFC assessment conducted by the ALJ included some silent consideration of Schink's mental impairments, we ha[d] no way of knowing whether it included the more detailed assessment required." *Id.* (quotation marks omitted). As a result, we held that the ALJ's assessment was "inadequate" and remanded the case to the district court with instructions to vacate and remand the Commissioner's decision. *Id.* at 1270.

Here, this case is distinguishable from *Schink*. Unlike in *Schink*, the discussion of the state's psychological consultants' opinions in the instant case follows the ALJ's description of the RFC, in the same section of the opinion where the ALJ describes the evidence that supports the RFC. In the context of the sequential evaluation, the location of this analysis matters, in that the ALJ's analysis of these opinions constitutes the "detailed assessment" of Watson's non-severe mental impairments that is required by *Schink*. 935 F.3d at 1269. In contrast with *Schink*, the ALJ here not only reviewed the paragraph B criteria at step two, but also reviewed the persuasiveness of the state psychological consultants' opinions at step four and in relation to the RFC. The ALJ explained that the psychological consultant's opinion at the initial level that Watson did not have a severe mental impairment or limitation was

persuasive because the evidence in the record showed normal objective clinical findings that supported this opinion. In support, the ALJ cited many documents in the record including the psychological evaluation conducted by Dr. Leventhal and the intake psychotherapy form completed by Watson's licensed clinical social worker. The ALJ then cited the same documents when she found that the psychological consultant's opinion at the reconsideration level that Watson had severe mental impairments of anxiety and depression with mild to moderate limitations was unpersuasive. The ALJ further noted that she found the psychological consultant's opinion at the initial level more persuasive because although Watson claimed to have difficulty concentrating, examinations included in the record found no evidence of Watson having trouble concentrating and Watson reported engaging in activities requiring concentration.

The ALJ also found that Nurse Profera's opinion that Watson had a GAF rating of 55-60 was unpersuasive because the rating was inconsistent with the contemporaneous examinations made by Nurse Profera during his treatment of Watson. Additionally, the ALJ expressly noted that she found Dr. Leventhal's opinion that Watson can manage money was persuasive because it was consistent with Dr. Leventhal's contemporaneously documented examination findings. However, the ALJ further found Dr. Leventhal's opinion that Watson had severe major depressive disorder unpersuasive because the opinion did not contain a work function analysis and was inconsistent with Dr. Leventhal's contemporaneously documented clinical examinations.

The ALJ's review of the persuasiveness of these opinions serves to provide an explanation for why she did not include any mental limitations in Watson's RFC, in that the ALJ deemed the psychological consultant's opinion that found no mental impairments or limitations persuasive, while the opinions that found impairments and limitations were not.

Accordingly, Watson's challenge to the ALJ's RFC fails, and we affirm as to that issue.

## II. Watson's Challenge with Respect to the Supportability and Consistency of Dr. Laux's Opinion and Watson's Argument that the ALJ Failed to Provide a Rationale for her Rejection of Nurse Profera's Mental Status Report

For claims filed on or after March 27, 2017, a medical opinion "is a statement from a medical source about what [the claimant] can still do despite [the claimant's] impairment(s) and whether [the claimant has] one or more impairment-related limitations or restrictions in the following abilities . . . ." 20 C.F.R. § 404.1513(a)(2). Such abilities include the "ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions"; the "ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting"; the "ability to perform other demands of work, such as seeing, hearing, or using other senses"; and the "ability to adapt to

environmental conditions, such as temperature extremes or fumes." *Id*. § 404.1513(a)(2).

For claims filed on or after March 27, 2017, an ALJ must consider any submitted medical opinion using five enumerated factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. *Id*. § 404.1520c(a), (c). Because the "most important" factors for evaluating the persuasiveness of a medical opinion are supportability and consistency, the ALJ must explain how it considered those two factors. *Id*. § 404.1520c(b)(2). "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1). "Consistency," in turn, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2). The ALJ "will articulate how [sh]e considered the medical opinions and prior administrative medical findings in [the claimant's] claim according to paragraph (b)." *Id*. § 404.1520c(a).

The regulations define "other medical evidence" as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and

severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." *Id.* § 404.1513(a)(3).

A statement on "issues reserved to the Commissioner," like a statement that a claimant is disabled or unable to work, is evidence that is neither valuable nor persuasive. *Id.* § 404.1520b(c)(3)(i). Accordingly, the ALJ is not required to provide an analysis of how she considered such evidence. *Id.* § 404.1520b(c).

Here, the ALJ properly considered the supportability of Dr. Laux's opinions by contrasting his opinions with his medical treatment records. The ALJ also addressed the consistency of Dr. Laux's opinions by contrasting his opinions with the results of the November 2021 MRI which showed an improvement in Watson's cervical spine and articulating that Dr. Laux's opinion was thus "internally inconsistent with his own treatment records." Additionally, the ALJ did not err by not analyzing the persuasiveness of Nurse Profera's January 2021 mental status report because it did not contain "medical opinions" under 20 C.F.R. § 404.1513(a)(2).

Accordingly, we affirm as to this issue.

**AFFIRMED.**