**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-13593

Non-Argument Calendar

_____

LAHAROLD WOODHOUSE,

*Plaintiff-Appellant,*

*versus*

COMMISSIONER OF SOCIAL SECURITY,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:24-cv-00995-CPT

_____

Before JORDAN, KIDD, and TJOFLAT, Circuit Judges.

PER CURIAM:

Laharold Woodhouse applied for, and was denied, Disability Insurance Benefits ("DIB") from the Social Security Administration (the "SSA"). After exhausting his administrative appeals, he

sought review with the District Court, which affirmed. Wood-house appeals, and we affirm.

## I. BACKGROUND

In January 2023, Woodhouse applied for DIB on account of various ailments affecting his neck, back, shoulders, knees, ankles, and feet. Woodhouse also claimed he was suffering from severe migraines "anywhere from three, sometimes four days a week." Woodhouse explained that he was taking medication to mitigate the migraines, but that the medication was impacting his ability to focus and sleep.

The SSA denied his application in April.[1] Woodhouse re-quested reconsideration and was denied again in June. Woodhouse was granted a hearing with an Administrative Law Judge ("ALJ"), which took place telephonically in December. Ultimately, the ALJ also concluded that Woodhouse was not "disabled" under the So-cial Security Act (the "Act") and hence was not entitled to DIB. The

---

[1] *See Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 668 (11th Cir. 2014) ("The SSDI process has three levels of administrative appeals from an initial denial: reconsideration by a new SSA examiner, a hearing before an administrative law judge, and an appeal to the Social Security Appeals Council. If an applicant exhausts those options without obtaining a favorable result, she may file suit in federal court.").

25-13593                Opinion of the Court                3

Appeals Council denied Woodhouse's request for review, and so the ALJ's decision became the Commissioner's final decision.[2]

Having exhausted his administrative remedies, Woodhouse sought judicial review with the District Court. The District Court affirmed the decision of the Commissioner, and Woodhouse timely appeals.

## II. STANDARD OF REVIEW

Our review is limited to whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021). Our review of the District Court's decision, as well as the Commissioner's legal conclusions, is de novo. *Id.*

"Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021) (quoting *Crawford*, 363 F.3d at

---

[2] The Commissioner is the supervisor and director of Social Security, and thus the decisions of the agency are often signed in his name. SOCIAL SECURITY, *Organizational Structure of the Social Security Administration*, https://www.ssa.gov/org/orgOC.htm (last visited June 18th, 2026). *See Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("We review the Commissioner's decision to determine if it is supported by substantial evidence and based on proper legal standards.").

1158). This standard is even lower than the preponderance of the evidence standard. *Id.*

## III. DISCUSSION

"Disability" under the Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." 42 U.S.C. § 423(d)(1)(A). An impairment is one that results from medically demonstrable abnormalities. *Id.* § 423(d)(3). This impairment must last or be expected to last continuously for at least a year. *Id.* § 423(d)(1)(A).

SSA regulations prescribe a five-step process to evaluate a disability claim: (i) First, the SSA considers the applicant's current work activity; (ii) Second, it considers the severity of each of the applicant's impairments, and denies any applicant with no "severe" impairments; (iii) Third, the SSA considers whether any impairment meets or equals its enumerated list of conditions that automatically qualify for DIB; (iv) Fourth, it considers an applicant's residual functional capacity ("RFC"), i.e., his ability to perform work despite his limitations;[3] and (v) Fifth, the SSA considers whether the applicant can adjust to other work given his age, education, and work experience. 20 C.F.R. § 404.1520(a)(4).

---

[3] At this step, if the SSA determines that the applicant can still perform his past relevant work, the applicant will be found not to be disabled. 20 C.F.R. § 404.1520(a)(4)(iv).

Woodhouse contests only the ALJ's decision at step four. Specifically, he contends that because the ALJ found at step two that Woodhouse's migraine headaches were "severe," the ALJ was required to explain in writing the limiting effects of those migraines when calculating his RFC. Because the ALJ's RFC discussion "was silent" as to his migraines, Woodhouse contends that the ALJ erred as a matter of law, and so we must reverse.

Woodhouse is correct that the ALJ needed to include a narrative discussion of his migraine headaches because they were a properly alleged impairment. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019) ("At step four of the sequential analysis, the ALJ conducts . . . an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments.") (internal quotation marks omitted). But we disagree that the ALJ's RFC discussion ignored Woodhouse's migraines. In fact, as the Commissioner notes on appeal, the "ALJ mentioned Woodhouse's migraine headaches over twenty times throughout her thorough and well-reasoned decision."

Unfortunately for Woodhouse, the ALJ found his assertions about the intensity of his migraine-related limitations to be inconsistent with the medical evidence. And we are in no position to second guess that conclusion. *Smallwood v. Schweiker*, 681 F.2d 1349, 1351 (11th. Cir. 1982) ("[W]e may not decide the facts anew or substitute our judgment for that of the [Commissioner].") The ALJ observed that, while Woodhouse had been prescribed migraine medication in July 2022, the record does not show any refills after that

point. Additionally, in the most recent direct records about his migraines, Woodhouse only mentioned having headaches about once a week. He also stated that the prescribed medication completely eradicated his headaches within 15 minutes, and that he only took it when Tylenol was not effective.

More broadly, the evidence demonstrated that Woodhouse was able to ride a bike, play golf, drive, operate a travel business, and even travel to Greece. Two reviewing physicians, Drs. Carlos Cordero and Steven Arkin, found that Woodhouse possessed a greater capacity for physical work than the ALJ had determined. Despite this finding, the ALJ provided more exertional limitations to help accommodate his migraine headaches than recommended by the doctors. Accordingly, the ALJ clearly considered Woodhouse's migraines, and her conclusion that Woodhouse retained substantial RFC was supported by substantial evidence.

As for Woodhouse's legal argument that the ALJ failed to construct a "logical bridge" between a discussion of the migraine impairment and its RFC conclusion, we find it meritless. As discussed, the ALJ addressed the severe impairment of Woodhouse's migraine headaches. The relevant evidence supporting Woodhouse's claims about the headaches' impact on his ability to function was limited, while the opposing evidence was copious.

## IV. CONCLUSION

The ALJ's conclusions were supported by substantial evidence, and the correct legal standards were applied. We affirm the District Court's decision to uphold the Commissioner's decision.

**AFFIRMED.**