**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

_____

No. 25-11313

Non-Argument Calendar

_____

JOSHUA CHILDRESS,

*Plaintiff-Appellant,*

*versus*

SOCIAL SECURITY ADMINISTRATION, COMMISSIONER,

*Defendant-Appellee.*

_____

Appeal from the United States District Court
for the Northern District of Alabama
D.C. Docket No. 4:21-cv-00237-CLS

_____

Before LUCK, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Joshua Childress appeals the district court's order affirming the Commissioner of the Social Security Administration's denial of his claim for disability insurance benefits. The Administrative Law

Judge determined that, although Childress had physical and mental impairments, there were jobs that existed in significant numbers in the national economy that he could perform. Childress argues that substantial evidence does not support the ALJ's decision because the ALJ confused the evidence of two different hernias and did not adequately justify discounting a medical opinion. We conclude that the ALJ's decision is supported by substantial evidence, and we affirm.

## I.

Childress suffers from several medical conditions, including back pain, obesity, hernias, bipolar disorder, manic depression, and anxiety. In February 2019, Childress applied for social security disability benefits. A year later, following an administrative hearing, an ALJ denied Childress's application. Childress appealed the ALJ's decision to the Social Security Appeals Council, which denied review, rendering the ALJ's decision the final decision of the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). Childress then filed a complaint for judicial review of the Commissioner's decision in federal district court. Upon the Commissioner's unopposed motion to remand under 42 U.S.C. § 405(g), the district court remanded Childress's claim back to the Commissioner for further proceedings. The Social Security Appeals Council vacated the ALJ's decision and remanded his claim for a *de novo* ALJ hearing.

Meanwhile, as Childress shepherded his claim through the administrative and judicial appeal process, his medical

conditions—specifically, his hernias—continued to flare up. As part of this process, Dr. Michael Wood evaluated Childress and completed a "Physical Capacities Form" on his behalf. Noting that Childress suffered from obesity and a prolapsed internal organ, Dr. Wood opined that, during any eight-hour daytime period, Childress would be expected to be lying down, sleeping, or sitting with his legs elevated for at least three hours. On the same form, Dr. Wood also stated that he did not expect Childress to fail to report to work due to his symptoms or be off-task while at work and not on a normal break.

Dr. Charles Newman later conducted a physical examination of Childress. Dr. Newman's report indicated that Childress suffered from two hernias—an "incarcerated incisional hernia" (small hernia) and a "right flank hernia" (large hernia)—and recommended surgical repair for the smaller hernia. The next month, Dr. Newman surgically repaired Childress's smaller hernia, and he instructed Childress to lift no more than 20 pounds for six weeks.

A few months later, Childress went to the emergency room at Gadsden Regional Medical Center, complaining of upper right abdominal pain related to his large hernia. After several more months, Childress went to Riverview Regional Medical Center because he had broken some of his ribs. When evaluated at the hospital and in a follow up appointment, doctors reported that Childress had a normal range of motion of his back and musculoskeletal system.

Eventually, Childress had a second ALJ hearing. There, Childress testified that his large hernia was "the size of a basketball" and caused him pain up to 90 percent of the day. He also testified that, because of his hernia, he could not sleep at night and had difficulty standing and sitting. The vocational expert testified that a hypothetical person of Childress's age, education, and work experience could perform a range of light work jobs, subject to various physical limitations.

Applying the five-step sequential disability evaluation required by 20 C.F.R. § 404.1520, the ALJ determined that Childress was not disabled. At step one, she found that Childress had not engaged in substantial gainful activity since the alleged onset date of his disability. At step two, she determined that Childress suffered from a hernia, scoliosis, chronic pain disorder, hypertension, morbid obesity, depression, panic disorder, and specific learning disorder. At step three, she concluded that none of Childress's impairments met the severity threshold that would categorically qualify him for benefits. Prior to proceeding to step four, the ALJ stated that, after considering the entire record (including all symptoms, medical opinions, and prior administrative findings), she determined that Childress had the residual functional capacity (RFC) to perform light work, subject to a few limitations. Then, applying Childress's RFC at step four, she concluded that Childress was unable to perform any past relevant work. Finally, at step five, the ALJ concluded that, considering Childress's age, education, work experience, and RFC, there were jobs that existed in significant numbers

in the national economy that he could perform. Accordingly, the ALJ found Childress not disabled and denied his application.

Childress again appealed the ALJ's decision to the Social Security Appeals Council, which denied review, rendering the ALJ's decision the final decision of the Commissioner. Childress then returned to federal district court, seeking judicial review of the Commissioner's decision. There, Childress made three principal arguments. First, he argued that the ALJ's description of his RFC was not consistent with the vocational expert's testimony. Second, he contended that the ALJ's discounting of Dr. Wood's opinion was not supported by substantial evidence. And third, he argued that the ALJ's treatment of his hernias, in general, was not supported by substantial evidence because the ALJ was confused between the two hernias and discounted their severity.

The district court issued a memorandum opinion affirming the ALJ's decision. First, the district court reasoned that the conflict between the vocational expert's testimony and the ALJ's RFC determination was supported by substantial evidence. Next, the district court determined that the ALJ's discounting of Dr. Wood's opinion complied with the requirements of 20 C.F.R. § 404.1520c because the ALJ provided adequate reasons for not relying on the opinion. Specifically, the district court was satisfied with the ALJ's thorough discussion of Dr. Wood's opinion's internal inconsistencies: it stated that Childress would need to rest for three hours in an eight-hour workday but also claimed that Childress would not be expected to be absent or off task at work. Finally, the district

court determined that the ALJ adequately explained her reasons for weighing the severity of Childress's hernias, which were supported by substantial evidence.

Childress timely appealed.

## II.

We review *de novo* the Commissioner's legal conclusions and the district court's decision about whether substantial evidence supports the Commissioner's decision. *Walker v. Soc. Sec. Admin., Comm'r*, 987 F.3d 1333, 1338 (11th Cir. 2021). Substantial evidence is "more than a scintilla"—it is "such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). Evidence need not equal a preponderance in order to be substantial. *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007). In reviewing for substantial evidence, we do not decide the facts anew, make credibility determinations, or reweigh the evidence. *Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1320 (11th Cir. 2021). However, all the evidence, "favorable as well as unfavorable to the decision," must be considered. *Foote*, 67 F.3d at 1560.

A party forfeits an issue if it is: (1) not prominently raised on appeal; (2) raised without supporting arguments and authorities; or (3) raised for the first time in a reply brief. *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1330–31 (11th Cir. 2004). When "a party hopes to preserve a claim, argument, theory, or defense on appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and

rule on it." *Juris v. Inamed Corp.*, 685 F.3d 1294, 1325 (11th Cir. 2012) (citation modified). That said, "once a party has preserved an issue, it may make any argument in support of that claim; parties are not limited to the precise arguments they made below." *United States v. Brown*, 934 F.3d 1278, 1306–07 (11th Cir. 2019) (citation modified).

For claims filed on or after March 27, 2017, an ALJ must "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must consider any submitted medical opinion or prior administrative medical finding using five enumerated factors: (1) supportability, (2) consistency, (3) relationship with claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(a), (c). Because the "most important" factors for evaluating the persuasiveness of a medical opinion are supportability and consistency, the ALJ must explain how she considered those two factors. *Id.* § 404.1520c(b)(2). "Supportability" refers to the principle that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(1). "Consistency," in turn, means that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* § 404.1520c(c)(2). The ALJ "will articulate how [she] considered the

medical opinions and prior administrative medical findings in [the claimant's] claim according to paragraph (b)." *Id.* § 404.1520c(a). However, "there are no magic words" that the ALJ must use in stating the weight given to medical opinions or the reasons for discounting them. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1276 n.14 (11th Cir. 2024), *cert denied sub nom.*, *Raper v. O'Malley*, 145 S. Ct. 984 (2024).

## III.

Childress raises two arguments. First, he argues that the ALJ's treatment of his hernias is not supported by substantial evidence. Second, he contends that the ALJ's analysis of Dr. Wood's opinion is not supported by substantial evidence. For the following reasons, we disagree with both of Childress's claims.

### A.

Childress contends that the ALJ's treatment of his hernias in the RFC determination is not supported by substantial evidence. Specifically, he argues that the ALJ confused his two hernias, mistaking their location, treatment, and severity. This error, he argues, led the ALJ to only consider the small hernia (which had been surgically repaired), rendering the decision unsupported by substantial evidence. The Commissioner responds that Childress forfeited this argument because he raised it for the first time in his reply brief before the district court. However, assuming that the issue is properly before us, the Commissioner contends that the ALJ did, in fact, thoroughly consider the evidence related to his hernias. The

Commissioner points out that the ALJ accurately differentiated between the hernias in her RFC determination nine separate times, indicating that she understood the difference between them. Accordingly, the Commissioner contends that the ALJ's assessment of Childress's hernias was, in fact, supported by substantial evidence.

As a preliminary matter, Childress has not forfeited this claim. While it is true that Childress did not raise the exact argument that the ALJ was confused between his two hernias until his reply brief, his initial brief did raise the overarching issue that the ALJ's decision was not supported by substantial evidence because it discounted the severity of his hernias. Accordingly, because Childress properly raised the issue that the ALJ discounted the severity of his hernias, he may argue on appeal that this mistake occurred because the ALJ confused his two hernias. *Juris*, 685 F.3d at 1325; *Brown*, 934 F.3d at 1306–07.

Nevertheless, Childress's argument fails on the merits because the ALJ accurately described each hernia, and her RFC finding is supported by substantial evidence. The ALJ's decision properly differentiated between the two hernias on multiple occasions. For example, in her RFC determination, the ALJ noted that Childress testified that he underwent surgery for an umbilical hernia in 2021 and that he also had a basketball-sized hernia on his right side. She also acknowledged that Dr. Newman diagnosed Childress with one "incarcerated incisional hernia" (small hernia) *and* one "right flank hernia" (large hernia). She further noted that Childress

had gone to the emergency room for pain related to his large hernia. Collectively, the ALJ's discussion of both hernias throughout her decision confirms that she was not confused between them.

Furthermore, the ALJ's decision is supported by substantial evidence. She thoroughly addressed the medical evidence related to Childress's hernias, noting that he was treated conservatively with an abdominal binder, that his medical records show that his pain was relieved by ibuprofen and Tylenol, and that his medical treatment notes indicate a normal range of motion of his musculoskeletal system and back. In short, the ALJ's evaluation of Childress's hernias in deciding his RFC is supported by all "such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote*, 67 F.3d at 1560. Accordingly, we cannot say that the ALJ erred in her RFC assessment. *See Buckwalter*, 5 F.4th at 1320.

### B.

Childress also argues that the ALJ's treatment of Dr. Wood's opinion in arriving at the RFC determination is not supported by substantial evidence. He argues that the record does not support any of the ALJ's reasons for discounting Dr. Wood's opinion—that it is internally inconsistent and undermined by other medical evidence. The Commissioner responds that the ALJ reasonably found Dr. Wood's opinion only partially persuasive and discussed its limitations with evidence from the record. Because the ALJ's decision considered the supportability and consistency of Dr. Wood's

opinion as required by 20 C.F.R. § 404.1520c(b)(2), the Commissioner contends it should be upheld.

We agree with the Commissioner. In her decision, the ALJ considered the supportability factor by noting that Dr. Wood's opinion was "supported with an explanation and some evidence" that aligned with the record. The ALJ also considered the consistency factor by determining that Dr. Wood's proffered three-hour rest requirement was inconsistent with his previous medical exam's findings, which did not show symptoms necessitating such a restriction. The evidence supports this determination because, as the ALJ discussed, the record contains another contemporary medical report, also authored by Dr. Wood, that noted Childress denied experiencing any symptoms that would necessitate the limitation. Finally, the ALJ also addressed the consistency factor by finding that Dr. Wood's statement that Childress should not be expected to miss any days of work or be off task was consistent with other medical evidence. Specifically, the ALJ discussed Dr. Newman's assessment that Childress would only be limited to lifting 20 pounds during the period immediately following his surgery, which the ALJ reasoned was consistent with Dr. Wood's determination that Childress should be able to work consistently and without extra breaks. Because the ALJ appropriately considered the supportability and consistency of Dr. Wood's opinion in evaluating its utility, we cannot say that her determination was unsupported by substantial evidence.

## IV.

Because the ALJ's treatment of Childress's hernias and Dr. Wood's opinion is supported by substantial evidence, the Commissioner's decision is **AFFIRMED**.